Marvin C. MESCH, Appellant,

v.

UNITED STATES of America,
Appellee.

Donald J. ANDERSON, Appellant,

v.

UNITED STATES of America,
Appellee.

Howard H. BALDWIN, Appellant,

v.

UNITED STATES of America,
Appellee.

Clair C. WAGNER, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 10051, 10183–10185.

United States Court of Appeals
Tenth Circuit.

March 8, 1969.

Rehearing Denied April 11, 1969.

Certiorari Denied June 23, 1969.
See 89 S.Ct. 2133.

See also 10 Cir., 407 F.2d 1290.

Jack I. Scheiman, Denver, Colo., for appellant Marvin C. Mesch, in No. 10051.

Dennis L. Blewitt, Boulder, Colo., for appellant Donald J. Anderson, in No. 10183.

Francis R. Salazar, Denver, Colo., for appellant Howard H. Baldwin, in No. 10184, and appellant Clair C. Wagner, in No. 10185.

Before LEWIS, HILL, and SETH, Circuit Judges.

SETH, Circuit Judge.

Appellants were convicted of using the mails to defraud in violation of 18 U.S. C. § 1341, and have taken these appeals. They assert similar positions on appeal and the cases have been consolidated.

The record shows that appellants Howard H. Baldwin and Clair C. Wagner conceived the idea of forming several corporations for the purpose of selling swimming pools or franchises or agencies for swimming pools. The sales were to be to persons who believed they were to become dealers and installers for the pools. The business of the several corporations was conducted at the same location, but several mailing addresses were used. The two above named appellants undertook to supervise the important activities of the corporations with which we are here concerned.

Appellant Marvin C. Mesch was a general manager of several of the corporations, and appellant Donald J. Anderson acted as a corporate officer or agent for the corporations.

The record establishes that the appellants sought names of prospects from the classified sections of telephone books of communities located in several western states. They would select names of building contractors, plumbers, dirt moving contractors, concrete dealers, and others engaged in similar businesses. The persons so selected would be told that one of the corporations was about to begin business in their area and it was necessary to find a person to install the pools to be sold. If this contractor indicated that he would do such work, then he would be asked to submit an estimate of the cost of installing a pool. He would be later asked whether he would submit an estimate for all pools in his locality, and if the interest continued, it would be suggested that it might be to his financial interest to become a dealer for the swimming pools handled by the corporation in addition to doing the installation work. The contractor would then be asked to come to Denver to discuss the matter further with officers of the corporation, and he was told his expenses would be borne initially by him and he would be later reimbursed by the corporation. Upon arrival of the contractor in Denver, he was taken to various locations and shown swimming pools which appellants represented to have been installed by their corporation. During the course of further discussions at the time of these visits in Denver, the contractor would be told by the various representatives, among other things, that (1) the company had made arrangements to finance the purchasers of pools in the contractor's area under discussion; (2) that company-employed salesmen would do all the actual selling to prospects in the area; (3) that the companies would at their sole expense provide all the advertising for sales in the area; (4) that a sample pool would be installed at the expense of the company at a location selected by the contractor and the company as a device to promote sales, and that the contractor's cost of installing this pool would be reimbursed by the company upon completion of the pool; (5) that the company-employed technicians would help supervise the pool installations at the outset to assist the contractor; (6) the contractor was also told that swimming pools had already been sold in the territory under discussion and that the dealer would receive a profit from these sales already made.

The discussion with the contractor would next turn to the matter of initial deposits to be made by the prospective dealer. Various sums would be suggest-

ed, and after some negotiations an amount of deposit to be made by the prospective dealer was agreed upon. This amount was usually about $3,000.00. A portion of this deposit was to be repaid to the contractor as each pool was sold. When the negotiations had progressed to this point, a written "dealer contract" was proposed and was executed by the parties. This written agreement contained few of the details which had been the subject of the previous discussions. On execution of the contract, the contractor was directed to return to his area and commence the preliminary work for the installation of the sample pool. The contractor was requested to notify the company when the preparations were complete and the components of the pool would then be sent to him.

The record shows that when the contractor advised the company he was ready for the pool components, he would be asked for a deposit on the pool, and if he forwarded this deposit, the pool would be sent to him COD for additional charges of between $2,000.00 and $3,000.00. If the dealer objected to this COD, he would be advised that he would be reimbursed for the pool costs by a ten per cent credit on each pool thereafter purchased by him.

The record shows that the representations which are enumerated above which were made to the contractor prior to his execution of the agreement were not carried out by the appellants or their corporations. Some three hundred dealerships were sold during the period covered by the record in this case, and it shows that in most instances the dealerships not only put up the good faith deposit but they also were induced to accept the COD shipment of the sample pool. If they did not pay the COD charges, they were cancelled out as dealers and their deposits retained. No advertising program was ever conducted, no salesmen were sent to sell in the area covered, and no sales to the public were ever made. The contractors did not recover their trip expenses and good faith deposits, nor the COD charges. No technical assistance or engineering services were provided.

On this appeal appellants assert several points as the basis for reversing the trial court. These positions briefly are as follows:

1. That the trial court violated the parol evidence rule by admitting in evidence testimony concerning the precontract conversations and representations made by the appellants.

2. That there was no evidence introduced to show that the contractors relied upon the representations and promises made by appellants.

3. That the trial court committed reversible error by submitting to the jury a form of verdict for a corporation, the charges against which had been dropped during the course of the trial.

4. That the instructions given by the trial court relative to misrepresentations were incorrect.

5. That the instruction relative to honest mistake and good faith was inadequate.

6. That the jury did not follow the court's instructions and that the prosecuting attorney acted improperly during the course of the trial.

7. The appellant Mesch argues that there was no defrauding by reason of the fact that the pools received were of the value represented.

8. Appellant Anderson argues that there was insufficient evidence relative to his participation.

■■ As to the first point above referred to relating to the parol evidence rule, there is adequate authority in this Circuit and elsewhere that the rule does not apply to criminal prosecutions of this nature, as it relates to proceedings between parties to the contract and their privies. We so held in Nickles v. United States, 381 F.2d 258 (10th Cir.). We there said that oral testimony is admissible to show the presence of fraud, despite proof of execution of contracts relating to the transaction. See also Shale v. United States, 388 F.2d 616 (5th Cir.).

The record contains adequate evidence to show that the victims relied upon the representations made during the course of the visits to Denver. This appears through the direct testimony of a number of the principal witnesses.

■ It appears that the form of verdict relating to Cinderella Pool Corporation of Illinois was mistakenly submitted to the jury as the charges against it had been dropped. The form of verdict which was intended to be submitted related instead to Cinderella Pool Corporation of Colorado. The parties were not aware of the mistake at the time that the forms of verdict were reviewed prior to their submission. When the jury returned, the bailiff read the name, Cinderella Pool Corporation of Illinois, and the court thereupon stopped the proceedings and withdrew the form mistakenly submitted, and thus no verdict was ever taken as to this corporation. By reason of the confusion of names no form of verdict was submitted as to the Colorado corporation, and the prosecution dismissed the indictment as to this corporation rather than to resubmit the case to the jury for its consideration. We find no reversible error arising from the submission of the forms of verdict. There is no charge of conspiracy as each of the individual appellants was charged with a substantive offense. The authorities submitted by the appellants on this point relate basically to conspiracy cases and are not persuasive. Nor do we find in this event any failure on the part of the jury to follow the instruction of the court nor any prejudice to appellants.

■ The appellants urge, as above indicated, that the court's instructions relating to fraud and misrepresentation were erroneous. This point relates principally to the refusal by the trial court to give an instruction tendered by the appellants to the effect that misrepresentations to be actionable must relate only to an existing or past fact. The court considered the tendered instruction but decided that the instruction was not justified in view of the proof. We agree. It is apparent from the record that many promises as to future undertakings by the appellants and the corporations were made, but there were also false representations as to past and present facts. These existing facts include representations that the company had a plan to finance the purchasers, that the company had advertising that was ready for distribution, that the company had a trained sales force, and that the company had installed particular pools in Denver, which in fact they had not. In view of the nature and extent of these misrepresentations, it is not necessary under the record to consider the effect of representations as to the future course of action to be taken by the appellants or the corporations.

■■ The appellants also urge that the trial court did not correctly instruct the jury as to good faith or honest mistake. It is apparent from the recent decisions of this court that the instruction relative to good faith must be clear and complete. See Sparrow v. United States, 402 F.2d 826 (10th Cir.); Steiger v. United States, 373 F.2d 133 (10th Cir.); Beck v. United States, 305 F.2d 595 (10th Cir.), and Hawley v. United States, 133 F.2d 966 (10th Cir.). We have examined the instruction here given by the court in view of the proof submitted and find that it is adequate and clear under the above authorities.

It does not seem necessary to discuss at length the additional objections made by the several appellants, as we have examined each and find no error.

■ As indicated above, the appellant Mesch makes an additional argument relating to the value of the pools which were received by the several contractors. He urges that these pools were equal in value to the price paid. This, however, is not the issue tried below. It is apparent that the contractor did not intend to buy a swimming pool but instead that he intended to become a dealer and installer in the context of the representations that had been made to him. As it turned out, the plan or scheme was one to sell swimming pools to the dealers, and thus they were induced to get some-

thing other than they bargained for and something other than was represented to them. Rude v. United States, 74 F.2d 673 (10th Cir.).

■ The evidence was sufficient to show adequate participation in the scheme and plan by all of the individual appellants including the appellant Anderson. Each participated and had a responsible position with reference to the corporations and to the activities which are the basis for the indictments. The record shows that each of the individual defendants were aware of the entire scheme and fully participated therein. We find no error.

Affirmed.