1997-NMCA-058

943 P.2d 537

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Andre ARCHIE, Defendant–Appellant.**

**No. 17017.**

Court of Appeals of New Mexico.

May 12, 1997.

Certiorari Granted June 26, 1997.

Tom Udall, Attorney General, William McEuen, Assistant Attorney General, Santa Fe, for Appellee.

Liane E. Kerr, Albuquerque, for Appellant.

**OPINION**

BOSSON, Judge.

1. Defendant appeals his conviction for embezzlement after a trial to the court without a jury. Defendant was on probation, confined by the conditions of his probation to stay within 150 feet of his telephone. As part of his probation, Defendant agreed to wear an electronic monitoring device (EMD) around his ankle which would communicate electronically with a computer connected to his telephone and thereby verify his presence as long as he continued to wear the EMD. Contrary to the conditions of probation, Defendant removed the EMD, damaging it, and threw it into a field. The value of the EMD was placed at over $250 and under $2500, thereby making this a fourth degree felony. On appeal, Defendant does not dispute that he violated his probation or that he may have committed the lesser crime of criminal damage to property. Defendant contends that his actions do not constitute the specific crime of embezzlement. We analyze Defendant's actions in light of the specific statutory elements of embezzlement and affirm.

**DISCUSSION**

2. The embezzlement statute, NMSA 1978, Section 30-16-8 (Cum.Supp.1996), states: "Embezzlement consists of the em-

bézzling or converting to his own use of anything of value, with which he has been entrusted, with fraudulent intent to deprive the owner thereof." The Uniform Jury Instruction 14–1641, further defines the elements of embezzlement:

For you to find the defendant guilty of embezzlement . . ., the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant was entrusted with _____ . . . ;

2. The defendant converted this _____ (property or money) to the defendant's own use. "Converting something to one's own use" means keeping another's property rather than returning it, or using another's property for one's own purpose [rather than] [even though the property is eventually used] for the purpose authorized by the owner;

3. At the time the defendant converted _____ (property or money), the defendant fraudulently intended to deprive the owner of the owner's property. "Fraudulently intended" means intended to deceive or cheat;

■ 3. Defendant first argues that there was no showing of a traditional fiduciary relationship, without which he maintains an embezzlement conviction cannot stand. We disagree. Our earlier case of *State v. Moss*, 83 N.M. 42, 44, 487 P.2d 1347, 1349 (Ct.App. 1971), stands for the proposition that a specific or technical fiduciary relationship is not necessary to sustain an embezzlement conviction under New Mexico law. While some jurisdictions may require a special fiduciary relationship, such as employment or agency, as an element of the crime, New Mexico does not. *See State v. Green*, 116 N.M. 273, 275, 861 P.2d 954, 956 (1993); *Moss*, 83 N.M. at 44, 487 P.2d at 1349, 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 8.6, at 368–69 (1986).

■ 4. Defendant maintains there was no such evidence because Defendant, a convicted felon, was not holding the EMD under any assumption of trust or confidence on his part. We disagree. "Entrustment" occurs when property is committed or surrendered to another with a certain confidence regarding the care, use, or disposal of that property. *See State v. Stahl*, 93 N.M. 62, 63, 596 P.2d 275, 276 (Ct.App.1979); *Moss*, 83 N.M. at 44, 487 P.2d at 1349. As *Moss* states, the usual and ordinary meaning of "entrustment" is applicable unless an expression of legislative intent requires otherwise. 83 N.M. at 44, 487 P.2d at 1349. In determining what is required by the element of entrustment, we are guided by legislative intent in enacting the embezzlement statute.

■ 5. The crime of embezzlement did not exist at common law. 2 LaFave, *supra*, § 8.1(b), at 331; 3 Charles E. Torcia, *Wharton's Criminal Law* § 383, at 464–65 (1995). Larceny, a common law crime, required that the thief take property from the victim's possession and that there be a "trespass in the taking." 2 LaFave, *supra*, § 8.1(a), at 328; *see Green*, 116 N.M. at 275, 861 P.2d at 956. When the defendant is in lawful possession of the owner's property, which the defendant then fraudulently converts to his or her own use, the defendant cannot be convicted of larceny because there is no trespassory taking. 3 Torcia, *supra*, § 383, at 463–64; *see also* 2 LaFave, *supra*, § 8.1(b), at 331 (discussing 1799 case in which bank clerk who immediately pocketed money given him by depositor, rather than putting money in cash drawer, held not guilty of larceny).

6. Statutes establishing embezzlement as an offense were passed to eliminate this loophole in the common law. *Green*, 116 N.M. at 275, 861 P.2d at 956, 2 LaFave, *supra*, § 8.6(a), at 368; 3 Torcia, *supra*, § 383, at 464–65. We construe the term "entrusted" in New Mexico's embezzlement statute in accordance with this objective and in a manner to accomplish the legislative intent.

■ 7. It is clear from the evidence that when the State turned over the EMD to Defendant, the State was relying on Defendant to act in a manner consistent with, and not adverse to, the State's interests with respect to the EMD. Defendant was after all on probation; he was free from incarceration on the strength of just such assurances that he would do what he was told and live up to his promises. Defendant even signed a

written agreement with his probation officer by which he created these assurances with respect to his continued care and possession of the EMD. The agreement states:

### EMD WEARER'S AGREEMENT

1. I <u>Andre Archie</u>, understand that the electronic monitoring device (EMD) and all of its accessories are the property of the Adult Probation Parole Division of the Corrections Department with the State of New Mexico.

2. I accept full responsibility for the care of and return of the electronic monitoring device.

3. I understand that it is my responsibility to immediately notify the Adult Probation Parole Office if the monitor is damaged in any way or if the bracelet is purposely/accidentally removed from my leg.

4. I understand that if any part of the electronic monitoring device is damaged or lost while it is in my possession, I will be charged with Embezzlement, Theft, or Criminal Damage. The cost of the device is $1,950.00.

In addition, although Defendant argues that the transfer of possession was only for the State's benefit, Defendant received the benefit of being placed on probation, rather than being incarcerated. Therefore, assuming that Defendant is correct in arguing that he must receive a benefit, we are satisfied from the record that there was an entrustment of property sufficient to meet the requirements of the statute.

■ 8. Defendant argues there was no evidence that he "converted" the EMD "to his own use"; instead, he disposed of the EMD or abandoned it but did not put it to "use" within the meaning of the statute. Again, we do not agree. When a person having possession of another's property treats the property as his own, whether he · uses it, sells it, or discards it, he is using the property for his own purpose. *See* UJI 14–1641 (conversion means "using another's property for one's own purpose [rather than] ... for the purpose authorized by the owner"); *see also Newman v. Basin Motor Co.,*

98 N.M. 39, 42, 644 P.2d 553, 556 (Ct.App. 1982) (conversion is, among other things, the unconsented exercise of dominion over a chattel to the exclusion or in defiance of the owner's right thereto); Black's Law Dictionary 1236 (6th ed. 1990) (defining "purpose" as "an end, intention, or aim, object, plan, project"). Because Defendant threw away the EMD in an effort to end the State's ability to monitor his movements, there was evidence in this case that Defendant was using the EMD for his own purpose.

9. According to Professor LaFave, the gravamen of conversion is interfering with the rights of the owner, either to the property itself or to the benefit from the manner in which the property was supposed to have been used. LaFave, *supra,* § 8.6(b), at 369. The details of the interference are less important than the interference itself. Professor LaFave describes the manner of the interference in broad terms: "using it up, selling it, pledging it, giving it away, delivering it to one not entitled to it, inflicting serious damage to it, claiming it against the owner ... each of these acts seriously interferes with the owner's rights and so constitutes a conversion" within the meaning of embezzlement. *Id.* (footnote omitted). The statutory reference that the wrongdoer's conversion must be "to his own use" is more a reference to a "use" other than that authorized by the owner; or as LaFave states: "These words are not to be taken literally, however, for it is not a requirement for a conversion that the converter gain a personal benefit from his dealing with the property." *Id.* at 370.

■ 10. Defendant also claims there was no evidence of the kind of specific fraudulent intent that is necessary to support a conviction for embezzlement. *See Green,* 116 N.M. at 277, 861 P.2d at 958 (fraudulent intent is a necessary element of embezzlement). Defendant protests that the district court had to infer intent, since it had not been specifically shown by the State. We do not see this as a basis for reversal. Defendant threw away the EMD after removing it, contrary to his promises in the EMD Wearer's Agreement. This gives rise to a reasonable inference that Defendant fraudulently intended to deprive the State of its property

and the intended use thereof. Defendant knew that the EMD belonged to the State and not to him. Defendant also knew that he was not free to dispose of the EMD by throwing it away. Intent involves a defendant's state of mind and is seldom, if ever, susceptible to direct proof. *State v. Manus,* 93 N.M. 95, 98, 597 P.2d 280, 283 (1979). Therefore, intent may be proved by circumstantial evidence. *Id.* Under the circumstances of this case, it was reasonable for the fact finder to infer that Defendant threw away the State's property with the specific fraudulent intent "to deprive the owner thereof." Fraudulent intent is defined as an intent "to deceive or cheat." UJI 14–1641. In light of Defendant's surreptitious actions, the evidence supports a reasonable inference to that effect.

11. Defendant points to the district court's observation that the charges in this case might have been covered by another lesser criminal statute, such as criminal damage to property. There was sufficient evidence to support a conviction for embezzlement, including evidence of entrustment of property and conversion of property. Entrustment and conversion are not elements of criminal damage to property. *See* NMSA 1978, § 30–15–1 (Repl.Pamp.1994). Nor is damage an element of embezzlement. *See* § 30–16–8. Therefore, this is not the kind of situation discussed in *State v. Higgins,* 107 N.M. 617, 621, 762 P.2d 904, 908 (Ct.App. 1988), where a general statute and a specific statute both cover the same subject matter, making the specific statute an exception to the general rule and requiring, in a criminal case, that the prosecution proceed under the specific statute. The two statutes prohibit different offenses, and therefore the prosecutor is free to select the statute and the charges to be brought against Defendant.

## CONCLUSION

12. The conviction is affirmed.

13. IT IS SO ORDERED.

PICKARD and WECHSLER, JJ., concur.