2008-NMCA-039

178 P.3d 847

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Gene Russell HORNBECK,**
**Defendant–Appellant.**

**No. 26,308.**

Court of Appeals of New Mexico.

Jan. 17, 2008.

Gary K. King, Attorney General, Santa Fe, NM, Joel Jacobsen, Assistant Attorney General, Albuquerque, NM, for Appellee.

Gary C. Mitchell, P.C., Gary C. Mitchell, Ruidoso, NM, for Appellant.

## OPINION

KENNEDY, Judge.

{1} Defendant appeals his convictions for embezzlement, fraud, securities fraud, and sale of unregistered securities. Defendant's arguments on appeal are that (1) his convictions for fraud, securities fraud, and embezzlement violate double jeopardy; (2) the district court erred in allowing evidence outside of the four corners of the promissory note;

(3) the district court erred in refusing his motions for directed verdict; (4) the evidence was insufficient to support his convictions; and (5) the district court erred in refusing his requested jury instructions relating to embezzlement, fraud, and exemptions.

{2} We take this opportunity to pick up an exposed thread from our case of *State v. Mercer,* 2005–NMCA–023, 137 N.M. 36, 106 P.3d 1283, in which we held that convictions on both alternative charges of fraud and embezzlement offended double jeopardy and could not stand. *Id.* ¶ 29. The holding in the case was correct: While alternative charges are proper, Defendant cannot be convicted of both fraud and embezzlement. Double jeopardy does not, however, account for the fact that in a situation such as this, convictions for both cannot stand because the crimes are mutually exclusive of each other. We therefore affirm Defendant's convictions for fraud, securities fraud, and the sale of unregistered securities, and reverse Defendant's conviction for embezzlement.

## FACTS

{3} Between 1993 and 1999, Defendant was a stockbroker who managed investments for Potash Company of America's Retirees Trust (PCA), a trust created in bankruptcy court to pay medical expenses for retired employees of the defunct Potash Company of America. PCA Board members placed great trust and confidence in Defendant, relying on his advice and letting him make decisions on behalf of the Board. In 1999, Defendant left his brokerage firm, Merrill Lynch, and stopped managing PCA's investments. Board member George Bartlett believed that the PCA trust was losing a good part of its portfolio's value by losing Defendant's expertise and, consistent with this belief, the trust's portfolio began losing money.

{4} In 2001, Defendant informed Board members that he was opening a broker-dealer office for Financial Networks. Board members told Defendant about their recent losses and Defendant replied, "I think we can stop the bleeding." Board members moved most of PCA's portfolio from Merrill Lynch to Financial Networks, and Defendant did stop the losses. After two or three months,

the Board gave Defendant $600,000 in exchange for a promissory note.

{5} The parties dispute the intent of the promissory note. Defendant asserts that the promissory note was a personal loan to Defendant with the requirement that he pay back the $600,000 with the interest rate of fifteen percent per annum. The State, conversely, successfully argued to the jury that the promissory note was a security with Defendant representing that he would invest all of the $600,000 on behalf of PCA with a company called Trend Traders. Upon his receipt of the $600,000, Defendant deposited it into his personal account and used some of the money to pay his personal bills. The Board never received back any of the principal amount of the $600,000 and received only some of the interest payments. Defendant was charged as noted and convicted. We discuss further facts in conjunction with the relevant issues.

## DISCUSSION

### Defendant's Convictions for Embezzlement and Fraud Are Mutually Exclusive

{6} Defendant argues that his convictions for embezzlement and fraud as charged in Counts I and II violate the prohibition against double jeopardy. Defendant argues that although the State was authorized to charge embezzlement and fraud in the alternative, that he cannot be convicted for both crimes because each conviction "was for the same incident, occurring on the same dates, involving the same monies, and involving the same alleged victim."

{7} In support of his argument that he was punished for both crimes when his actions support a conviction for one, Defendant cites to *Mercer. Mercer* holds that the State is authorized to charge embezzlement and fraud in the alternative, but that convictions for both alternatives violate the prohibition against double jeopardy. *Id.* The holding in *Mercer* relates to the double jeopardy prohibition against multiple punishments based on the same offense. *See generally Swafford v. State,* 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991).

{8} The State argues that Defendant's reliance on *Mercer* alone, without any specific

reference to *Swafford*, precludes any double jeopardy issue from properly being before this Court. We disagree. *Mercer* plainly holds that convictions for both fraud and embezzlement violate double jeopardy. For this reason, Defendant's specific reference to *Mercer* without citation to *Swafford* is sufficient to alert this Court to his double jeopardy complaint. *State v. Gomez*, 1997–NMSC–006, ¶ 30, 122 N.M. 777, 932 P.2d 1 (assertion of the legal principle and development of the facts are generally the only requirement to assert a claim on appeal).

{9} The State asserts that *Mercer* is inapplicable because *Mercer* relates to a proceeding when the defendant has been charged in the alternative in one count with embezzlement and fraud, rather than by separate counts, as in this case. Ironically, given the State's argument that the defense has not briefed double jeopardy by only citing *Mercer*, we conclude that *Swafford's* double jeopardy analysis is not a useful model, but we stand by our result in *Mercer* that convictions for both fraud and embezzlement cannot stand. The issue is simply whether his conviction on both offenses is allowed by law. We hold it was not.

{10} Mercer's convictions on both alternatives were reversed owing to the improper exclusion of evidence, and we did not address her other issues, including the double jeopardy argument, in any real depth. We did talk about the extent to which the evidence established Mercer's fraudulent intent in acquiring money and, to bolster the existence of that fraudulent intent, spoke of how she used the money she received. We did not talk about the relevance of how she acquired the money, or the process of entrustment and conversion in the context of her using the money. Our ruling was simply that if the jury "again convicts Defendant of alternatives on any count, one alternative conviction must be vacated." *Id.* ¶ 29. Unfortunately, we used the term "double jeopardy" while describing the conflict in that case between fraud and embezzlement, and our opinion neither fairly met nor resolved the *reason* that Mercer could only be convicted of one or the other crime. We now conclude that though the crimes can be properly charged in the alternative, Defendant's convictions for both fraud and embezzlement cannot stand because they are legally mutually exclusive of each other.

{11} The State maintains that Defendant's act of fraud was complete on June 20, 2001, when the PCA gave him the $600,000, based on his fraudulent conduct, practices, or representations and that Defendant's subsequent act of embezzlement was complete when he converted the $600,000 to his own use by depositing it in his personal account and writing checks to cover his personal expenses. In addition to relying on the same evidence to prove both the completion of the fraud as well as the entrustment of the embezzlement, the State also relied on the same circumstantial evidence to show the requisite fraudulent intent for the respective crimes. For both crimes, the State relied on Defendant's conduct, prior to June of 2001, of approaching Board members and telling them that if they gave him $600,000, he would invest it on the Trust's behalf in an account with Trend Traders, with a promise of excellent returns. The State similarly relied on evidence that Defendant repeatedly told board members that the full $600,000 was invested with Trend Traders and that Defendant had already netted a $70,000 gain, when in fact Defendant knew that he had either spent or nearly lost all of the $600,000.

{12} By focusing on the manner in which Defendant obtained the $600,000, it becomes apparent that Defendant correctly asserts that while alternative charges would have been permissible, separate convictions were not. In particular, a comparison of the elements reveals that a key distinction between the two crimes is in the manner of acquiring of the property at issue. Fraud requires a finding that the property was acquired unlawfully, by deception, based on words or conduct that misrepresented a fact. *See State v. Jones*, 73 N.M. 459, 465, 389 P.2d 398, 402 (1964) (providing that in a prosecution for obtaining of money under false pretenses, the State must show that the victim relied on the false representation and surrendered her money to the defendant based on the false representation). Fraud begins with fraudulent intent, and is complete at the

point when a person receives the property. *State v. Schifani,* 92 N.M. 127, 131, 584 P.2d 174, 178 (Ct.App.1978). Embezzlement begins at the point where Defendant comes into the lawful possession of another's property, and ends when it is fraudulently converted to his use. *State v. Archie,* 1997–NMCA–058 ¶ 6, 123 N.M. 503, 505, 943 P.2d 537, 539. Tendering of $600,000 to defendant arguably completed the fraud and constituted the first act in the embezzlement. Defendant's act of fraud was not complete before the embezzlement began, resulting in the fraud and embezzlement being part of the same criminal transaction. The overlap of one element— receiving property—does not make the two crimes the same. How the fraudulent or criminal intent bears on either wrongfully obtaining or disposing of the property is critical.

{13} Both "embezzlement and false pretenses were new crimes created by the legislature for the specific purpose of plugging loopholes left by the narrowness of the crime of larceny." 3 Wayne R. LaFave, *Substantive Criminal Law* § 19.6(a), at 99 (2d ed.2003); *see also State v. Green,* 116 N.M. 273, 275, 861 P.2d 954, 956 (1993); *State v. Tanner,* 22 N.M. 493, 495, 164 P. 821, 822 (1917) (providing that a "false pretense is such a fraudulent representation of an existing or past fact, by one who knows it not to be true, as is adapted to induce the person to whom it is made to part with something of value" (internal quotation marks and citation omitted)). When acquisition of the same property is at issue, LaFave recognizes that "the courts have generally held or assumed that these crimes do not overlap, that they are mutually exclusive." 3 LaFave, *supra,* at 99; *see* 29A C.J.S. *Embezzlement* § 5 (2007) ("Where the intent to take the property of another is formed before the taking and is coupled with some deception or trick to acquire possession of the property the crime is not embezzlement, for one cannot embezzle that which he or she has already stolen.")(footnote omitted); *see also State v. Pedroncelli,* 100 N.M. 678, 680, 675 P.2d 127, 129 (1984) (distinguishing embezzlement from larceny in that "[l]arceny involves an original wrongful taking or trespass, whereas embezzlement involves lawfully possessed

property that an offender later converts to his own use"); *State v. Bryant,* 99 N.M. 149, 150, 655 P.2d 161, 162 (Ct.App.1982) (holding that "[e]mbezzlement differs from the crime of larceny in that the property which is the subject of embezzlement was originally lawfully obtained by the accused and was later fraudulently converted or appropriated to his own use with an intent to deprive the owner thereof," while larceny is an original wrongful taking or trespass).

{14} Embezzlement requires a finding that the property initially was acquired lawfully by entrustment, but then later unlawfully converted or appropriated to the defendant's own use. *See, e.g., State v. Archie,* 1997–NMCA–058, ¶¶ 2, 4, 123 N.M. 503, 943 P.2d 537 ("Entrustment occurs when property is committed or surrendered to another with a certain confidence regarding the care, use, or disposal of that property." (internal quotation marks omitted)); *See also State v. Kovach,* 2006–NMCA–122, ¶¶ 13–14, 16, 140 N.M. 430, 143 P.3d 192 (reversing the defendant's embezzlement conviction because the facts did not show that defendant was in lawful possession of the property when she converted it to her own use); *State v. Seefeldt,* 54 N.M. 24, 26, 212 P.2d 1053, 1054 (1949) (recognizing that embezzlement requires that the property be "fraudulently appropriated by the person to whom it has been intrusted (sic).")); *United States v. Weller,* 238 F.3d 1215, 1219 (10th Cir.2001) (holding that "[e]mbezzlement requires proof of fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come") (internal quotation marks and citation omitted).

{15} The facts supporting "entrustment" were the same facts supporting the completion of the fraud—namely, when PCA handed Defendant the $600,000 check, the fraud was complete and the "entrustment" began. This is fatally inconsistent because, as discussed above, embezzlement requires a finding that the defendant lawfully came into possession of the property by entrustment. Any entrustment necessarily could not have been lawful if the jury determined that fraud was used to get possession of the money. For

this reason, under the facts of this case, guilty verdicts for both embezzlement and fraud are mutually exclusive. *See United States v. Daigle*, 149 F.Supp. 409, 414 (D.D.C.1957) (holding that "where a guilty verdict on one count negatives some fact essential to a finding of guilty on a second count, two guilty verdicts may not stand"); *State v. Speckman*, 326 N.C. 576, 391 S.E.2d 165, 167 (1990) ("[S]ince property cannot be obtained simultaneously pursuant to both lawful and unlawful means, guilt of either embezzlement or false pretenses necessarily excludes guilt of the other."); *Davis v. United States*, 37 App. D.C. 126, 133 (1911) (holding that the defendant's conviction for embezzlement of a specified sum of money was inconsistent with a conviction under another count for obtaining the money by false pretenses); *cf. State v. Ortiz*, 90 N.M. 319, 321–22, 563 P.2d 113, 115–16 (Ct.App.1977) (holding that when the facts support either a conviction for fraud or embezzlement, charging in the alternative did not violate double jeopardy).

■ {16} Having concluded that Defendant's convictions for fraud and embezzlement are mutually exclusive, the question is which conviction should be vacated to remedy the problem. The jury could have found Defendant guilty of either count, with the distinguishing factor being whether Defendant obtained initially the $600,000 unlawfully by fraud or whether he obtained it lawfully by entrustment, but later unlawfully converted the money to his own use with fraudulent intent. Defendant disputes both propositions that he unlawfully obtained the money either by deception or pursuant to a lawful entrustment in his role as PCA's investor. Defendant argues instead that he lawfully obtained the money pursuant to a personal loan. Because the jury found that he initially obtained the money by fraud, *see State v. Salazar*, 1997–NMSC–044, ¶ 44, 123 N.M. 778, 945 P.2d 996 (recognizing that the jury may reject the defendant's version of events), and that the fraud was complete at the time Defendant subsequently converted the money, we hold that as a matter of law that Defendant could not have committed the crime of embezzlement, as his acquisition of the property was by fraud rather than by

lawful entrustment. For this reason, we reverse Defendant's embezzlement conviction. *Cf. Daigle*, 149 F.Supp. at 414–15 (holding that the trial court had the right to direct a verdict of acquittal on the mutually exclusive verdict of larceny as defendant was not prejudiced by any alleged choice of verdicts since the penalty for embezzlement was less than that of larceny); *State v. Hancock*, 44 Wash. App. 297, 721 P.2d 1006, 1007–08 (1986) (holding that the defendant could not be convicted of both theft and possession of stolen property as he could not be both the principal thief and the receiver of stolen goods, and reversing the possession count); *People v. Broome*, 21 A.D.2d 899, 251 N.Y.S.2d 747, 749 (N.Y.App.Div.1964) (indicating that "[a]s nothing would be gained by ordering a new trial, it is sufficient to reverse the conviction on the second count"), *rev'd on other grounds by People v. Broome*, 15 N.Y.2d 985, 260 N.Y.S.2d 6, 207 N.E.2d 603 (N.Y.1965).

### Defendant's Convictions for Fraud and Securities Fraud Do Not Violate the Prohibition Against Double Jeopardy or the General/Specific Rule

■ {17} Defendant argues that his convictions for fraud and securities fraud violate both double jeopardy and the general/specific rule. *See generally Swafford*, 112 N.M. at 7, 810 P.2d at 1227 (setting forth that the Double Jeopardy Clause of the Fifth Amendment, enforced against the states by the Fourteenth Amendment, protects defendants against multiple punishments for the same offense); *State v. Santillanes*, 2001–NMSC–018, ¶ 7, 130 N.M. 464, 27 P.3d 456 (setting forth that under the general/specific statute rule, if two statutes address "the same subject conflict, the more specific statute will prevail over the more general statute absent a clear expression of legislative intent to the contrary").

{18} As previously addressed, Defendant's conviction for fraud requires that Defendant, by words or conduct, intended to deceive or cheat PCA; that because of the misrepresentation and PCA's reliance on it, Defendant obtained over $20,000; and the money belonged to someone other than Defendant. Defendant's conviction for securities fraud

requires that Defendant sold a security and that in connection with the sale of the security, Defendant (1) purposefully and directly or indirectly used a plan or scheme to deceive or cheat others; or (2) made an untrue statement of fact that under the circumstances would have been important or significant to the investment decision of a reasonable person; or (3) omitted a fact that under the circumstances would have been misleading to the investment decision of a reasonable person; or (4) engaged in an act, practice or course of business which could cheat or would operate as a fraud or deceit upon a reasonable person.

{19} NMSA 1978, § 58–13B–39(E) (1986) provides that "[n]othing in the New Mexico Securities Act of 1986 limits the power of the state to punish a person for conduct which constitutes a crime under other law." In *State v. Ross*, 104 N.M. 23, 27, 715 P.2d 471, 475 (Ct.App.1986), this court held that this statement by the Legislature was a "clear expression of legislative intent that a defendant may . . . be convicted and sentenced for both general fraud and securities fraud."

{20} We hold that Defendant's convictions for both fraud and securities fraud is neither violative of double jeopardy principles nor the general/specific rule. *See, e.g., State v. Higgins*, 107 N.M. 617, 621, 762 P.2d 904, 909 (Ct.App.1988) (holding that the general/specific rule is inapplicable to convictions pursuant to the general fraud statute and the Worthless Check Act because each crime requires proof of elements that the other does not and because the statutes are designed to remedy different purposes and evils). For this reason, we need not specifically address whether the conduct under the particular circumstances of this case could be viewed as unitary under a *Swafford* analysis, as even if such conduct was unitary, our analysis shows that the Legislature intended that the prosecutor is afforded discretion in both charging the crimes and seeking separate punishments of such crimes.

**The District Court Properly Allowed Evidence Outside of the Four Corners of the Promissory Note To Prove Fraud**

{21} Defendant argues that the district court erred in allowing in evidence out-side of the four corners of the promissory note in violation of the parol evidence rule. See, *e.g., C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 509, 817 P.2d 238, 243 (1991) (providing that the parol evidence rule "bars admission of evidence extrinsic to the contract to contradict and perhaps even supplement the writing"); *cf. Wilburn v. Stewart*, 110 N.M. 268, 270, 794 P.2d 1197, 1199 (1990) (holding that the "parol evidence is admissible to show any misrepresentations that induced the parties to contract, whether they are fraudulent, negligent, or innocent").

{22} Defendant argues that the promissory note constituted the total agreement between the parties and only established that Defendant had failed to repay his personal loan pursuant to the promissory note's terms. In this regard, Defendant argues that evidence that the Board believed Defendant was going to day-trade all of the money, although he in fact did not do that, as well as evidence relating to PCA's attempts at collection and the manner in which Defendant used and lost the money, was highly prejudicial and should not have been admitted in that such evidence was outside of the terms of the promissory note.

{23} We hold that evidence outside of the terms of the promissory note was properly admitted for two reasons. First, the parol evidence rule does not apply to criminal proceedings as "[t]he people prosecuting for a crime committed in relation to a contract are not parties to the contract and are not bound by it." *Gibson v. United States*, 268 F.2d 586, 589 (D.C.Cir.1959) (internal quotation marks and citation omitted); *see also Mesch v. United States*, 407 F.2d 1286, 1288 (10th Cir.1969) (holding that the parol evidence rule does not apply to criminal prosecutions of mail fraud and that "oral testimony is admissible to show the presence of fraud, despite proof of the execution of contracts relating to the transaction").

{24} Second, independent of the criminal nature of the present proceedings, a long-standing and well-recognized exception to the parol evidence rule is that it has no application to situations where an agreement

is induced or procured by fraud. *See, e.g., Univ. of N.M. Police Officer's Ass'n v. Univ. of N.M.*, 2004–NMCA–050, ¶ 11, 135 N.M. 655, 92 P.3d 667 (holding that parol evidence is admissible to determine whether ambiguities exist in a contract and to resolve ambiguities); *see also Wilburn*, 110 N.M. at 269–70, 794 P.2d at 1198–99. Given the position that Defendant tendered the promissory note as part of a fraud or as part of committing securities fraud, we hold that, even if this was a civil proceeding, the parol evidence rule would not bar admission of the extrinsic evidence.

**The District Court Properly Denied Defendant's Motions for Directed Verdict Because Defendant Testified In His own Defense**

■ {25} Defendant argues that the district court erred in refusing to direct a verdict of not guilty for embezzlement, fraud, securities fraud, and failure to register securities. The State argues that because Defendant testified in his own defense, he waived any defense that the evidence at the close of the State's case was insufficient to submit to the jury. *See State v. Baldwin*, 2001–NMCA–063, ¶ 30, 130 N.M. 705, 30 P.3d 394. We agree. We disagree with Defendant's assertion that the *Baldwin* rule "is an absolute dangerous rule which has outlived any usefulness." However, "deficiencies in the State's case can be made up in the defense's case," thereby providing a rationale why the rule is in force. *State v. Durant*, 2000–NMCA–066, ¶ 14, 129 N.M. 345, 7 P.3d 495. Last, although testifying defendants waive their claims that the evidence is insufficient to submit to the jury, they are afforded an opportunity to present their sufficiency arguments on appeal, as did Defendant in this appeal which we address later in this opinion.

**The District Court Properly Rejected Defendant's Tendered Jury Instructions**

■ {26} Defendant argues that the district court improperly refused to submit his requested jury instruction number five:

> You are instructed that generally when dealings between two persons (a corporation is recognized by law as one person)

create a relationship of debtor and creditor, a failure of one of the people to pay money to the other does not, in and of itself, constitute the crime of embezzlement and/or fraud. A debtor-creditor relationship is determined by the facts of the particular case.

{27} Given our reversal of Defendant's embezzlement conviction, we discuss Defendant's refused jury instruction as it relates to fraud. The submitted fraud jury instruction sets forth that Defendant's conviction for fraud requires that he obtained, by fraudulent intent, possession of the $600,000, by words or conduct that misrepresented a fact, thus necessarily requiring findings that are necessarily beyond that of a debtor-creditor relationship. Defendant's jury instruction that a debtor-creditor relationship with a subsequent failure to repay the loan does not in itself constitute fraud was a matter to be argued to the jury, rather than included in a jury instruction. *See State v. Torres*, 99 N.M. 345, 347, 657 P.2d 1194, 1196 (Ct.App. 1983) (recognizing that jury instructions should not comment on the evidence and that argument and explanation are best left to counsel). In this regard, had the jury believed that the transaction involving the promissory note was limited to that, then it would not have convicted Defendant of fraud. *State v. Beal*, 86 N.M. 335, 336, 524 P.2d 198, 199 (Ct.App.1974) (holding that where the given jury instructions adequately cover the law, the "refusal to give a separate instruction is not error").

■ {28} Defendant also argues that the district court improperly refused to submit his requested jury instruction number six: "You are instructed that in New Mexico a representation by a person as to future events or what is going to happen in the future is not fraud except where there is a misstatement of present intent." As support, Defendant refers to *Solomon v. Pendaries Props., Inc.*, 623 F.2d 602, 605 (10th Cir.1980) (stating that "New Mexico follows the well-settled rule[ ] that a representation of future events is not actionable fraud except when there is a misstatement of present intent"). *Solomon* refers to *Telman v. Galles*, 41 N.M. 56, 61, 63 P.2d 1049, 1052

(1936), wherein the Court referred to the general rule that "fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." (internal quotation marks and citation omitted). Significantly, however, *Telman* recognizes the general exception that

> if the person making the promise or statement as to a future event is guilty of an actual fraudulent intent, and makes the promise or misrepresentation with the intention of deceiving and defrauding the other party, and accomplishes this result, to the latter's injury, fraud may, under many circumstances, be predicated thereon, notwithstanding the future nature of the representations.

*Id.* (internal quotation marks and citation omitted). Although unclear, we understand the language in Defendant's proffered jury instruction "except where there is a misstatement of present intent" to relate to this general exception.

{29} In the present case, the State presented evidence that Defendant obtained the $600,000 by promising to invest the money, in the future, for PCA. Language in the submitted fraud jury instruction that Defendant "by any words or conduct, misrepresented a fact . . . intending to deceive" properly allows the jury to make findings consistent with both the general rule and the exception. Defendant's tendered jury instruction is unclear and misleading, and improperly gives the jury the impression that promises or statements as to future events can never be the basis for fraud. In this regard, we hold that the language "except when there is a misstatement of present intent" does not sufficiently address the *Telman* exception. For this reason, we hold that the district court properly refused such instruction. *See State v. Kraul,* 90 N.M. 314, 317, 563 P.2d 108, 111 (Ct.App.1977) (holding that jury instructions were properly refused when the instruction was confusing).

**The District Court Properly Refused Defendant's Tendered Jury Instructions Relating To Exempt Transactions and Securities**

{30} Defendant argues that the district court improperly refused his tendered jury instructions relating to exempt transactions and securities. *See generally* NMSA 1978, § 58–13B–20 (1997) (stating that "[i]t is unlawful for a person to offer to sell or sell any security in New Mexico unless: A. the security is registered under the New Mexico Securities Act of 1986; B. the security or transaction is exempt under that act; or C. the security is a federal covered security"); NMSA 1978, § 58–13B–27 (1999) (listing exempt transactions); NMSA 1978, § 58–13B–26 (1999) (listing exempt securities).

{31} Defendant's tendered jury instructions are premised on UJI 14–4321 NMRA (jury instruction for the exempt transaction defense) and UJI 14–4320 NMRA (jury instruction for exempt security defense), with one significant departure. In pertinent part, UJI 14–4321 and UJI 14–4320 provide that if *you find that the sale or offer to sell of the unregistered security was an isolated transaction, then you must find the defendant not guilty of the sale of an unregistered security.* Defendant's submitted jury instructions, however, provide that if the unregistered security was an isolated transaction, "you must find the defendant not guilty of the sale of an unregistered security as charged in Count III *and not guilty of securities fraud as charged in Count IV.*" (Emphasis added.)

{32} Defendant's tendered jury instructions contain incorrect statements of the law. By its express terms, Section 58–13B–20(B) provides that exempt securities and exempt transactions are not subject to the registration requirements, but says nothing regarding anti-fraud provisions. While an applicable exemption is a defense to the crime of the sale of unregistered securities, it is not a defense to securities fraud. *See* 69A Am.Jur.2d *Securities Regulation—State* § 123 (1993) (providing that "[d]espite the fact that an offer or sale of securities is a transaction in exempt securities or is made through an exempt transaction, the blue sky laws, without exception, provide that the anti-fraud provisions apply to the transaction") (footnote omitted); *N.M. Life Ins. Guar. Ass'n v. Quinn & Co.,* 111 N.M. 750, 759, 809 P.2d 1278, 1287 (1991) (recognizing

that exemption from registration requirements does not exempt those securities from the anti-fraud provisions of the New Mexico Securities Act); *State v. Philips,* 45 Wash. App. 321, 725 P.2d 627, 629 (1986) (providing that a transaction may be exempt for registration purposes but still subject to the securities fraud statute). Stated another way, the exemptions are from the necessity to register a security, but not from the obligation to refrain from fraudulent practices. Because Defendant's tendered jury instructions incorrectly set forth that the exemptions also provide a defense to securities fraud, we hold that they constituted incorrect statements of law and were therefore properly refused. *See State v. Lara,* 110 N.M. 507, 515, 797 P.2d 296, 304 (Ct.App.1990) (holding that in order to premise error on a refused instruction, the defendant must have tendered a legally correct statement of the law).

### There Is Sufficient Evidence To Support Defendant's Convictions

{33} Defendant argues that there was insufficient evidence to support his convictions. We only review Defendant's convictions for fraud, securities fraud and sale of unregistered securities, as we reversed Defendant's conviction for embezzlement. We review the evidence to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). Under this standard, "[w]e view the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict." *State v. Hernandez,* 115 N.M. 6, 26, 846 P.2d 312, 332 (1993). We do not re-weigh the evidence or substitute our judgment for that of the fact-finder, so long as sufficient evidence supports the verdict. *Sutphin,* 107 N.M. at 131, 753 P.2d at 1319.

{34} Regarding Defendant's conviction for fraud, the jury was required to find that Defendant, by words or conduct, misrepresented a fact to PCA with intent to deceive or cheat PCA, and that because of the mis-

representation, Defendant obtained over $20,000 which belonged to PCA. *See* NMSA 1978, § 30–16–6 (2006); UJI 14–1640 NMRA. Defendant argues specifically that no misrepresentation occurred, but instead argues that, as evidenced by the promissory note, he simply received a loan and agreed to repay it. In this regard, Defendant argues that any statements he made regarding whether or not he intended to "day trade" the money in order to repay the loan were irrelevant to the terms of the loan and his agreement to repay it. Contrary to Defendant's position, the State presented evidence outside of the terms of the promissory note to show that Defendant obtained the money by representing he would invest it for PCA with Trend Traders. To this end, to prove Defendant's fraudulent intent and deception, the State introduced into evidence Defendant's fraudulent September 2001 report that purported to show that the full $600,000 was invested with Trend Traders and had already produced a $70,000 gain, as well as Board members' testimony and minutes from Board meetings reflecting that Defendant represented at monthly meetings that the Trend Traders' investments were doing well. *See, e.g., State v. Crews,* 110 N.M. 723, 729, 799 P.2d 592, 598 (Ct.App.1989) ("Intent to defraud can reasonably be inferred from the actions of defendants in furnishing incorrect documentation[.]"); *State v. Gardner,* 103 N.M. 320, 324, 706 P.2d 862, 866 (Ct.App.1985) (holding that "[f]raudulent intent may be proven by reasonable inferences drawn from a defendant's statements and conduct").

{35} We hold that the fact-finder reasonably could have relied on the foregoing evidence to support Defendant's conviction. *See State v. Sparks,* 102 N.M. 317, 320, 694 P.2d 1382, 1385 (Ct.App.1985). Although Defendant contends that no misrepresentation occurred and that the parties' agreement was limited to the terms of the promissory note, it was the fact-finder's prerogative to reject Defendant's version of the events and conclude instead that Defendant obtained the $600,000 by falsely representing that he would invest the money for PCA. *See Salazar,* 1997–NMSC–044, ¶ 44, 123 N.M. 778, 945 P.2d 996 (recognizing that the fact finder may reject the defendant's version of events);

*see also State v. Gallegos,* 109 N.M. 55, 66, 781 P.2d 783, 794 (Ct.App.1989) (stating that intent is usually inferred from the facts of the case, not direct evidence); *State v. Gregg,* 83 N.M. 397, 399, 492 P.2d 1260, 1262 (Ct. App.1972) (holding that there was substantial evidence of the defendant's fraudulent intent even though the evidence was circumstantial).

{36} Defendant's conviction for securities fraud requires that he sold a security and that, in connection with the sale of the security, he purposefully and directly or indirectly used a plan or scheme to deceive or cheat others. *See* NMSA 1978, § 58–13B–30 (1986); UJI 14–4302 NMRA. Evidence was presented that Defendant gave PCA a promissory note in exchange for $600,000 by fraudulently promising to invest the money on behalf of PCA, but instead converted the money to his personal use. We hold that the jury reasonably relied on this evidence to support Defendant's conviction. *See Sparks,* 102 N.M. at 320, 694 P.2d at 1385; *see also* NMSA 1978, § 58–13B–2(X) (1999) (providing that unless the context shows otherwise, a note is a security). Defendant's argument that the evidence was insufficient because the security was exempt pursuant to Section 58–13B–27(U) is without merit. Moreover, as previously discussed, whether or not a security is exempt from registration requirements is not determinative of whether or not a person is guilty of securities fraud. Instead, an exemption is only a defense to the failure to register a security.

{37} Last, Defendant's conviction for failing to register a security requires that Defendant sold a security; that the security was required to be registered by the state securities law with the State of New Mexico prior to the sale; and the security was not registered as required. *See* § 58–13B–20; UJI 14–4301 NMRA. Because Defendant did not register the security, the evidence is sufficient to support his conviction. *See generally Sparks,* 102 N.M. 317, 694 P.2d 1382. Defendant's argument that the evidence was insufficient because the security was exempt pursuant to Section 58–13B–27(A), (U) is without merit. As discussed, Defendant's tendered jury instructions relating to the asserted exemptions contained incorrect statements of the law. For this reason, the matter of exemptions was not before the jury.

## CONCLUSION

{38} We affirm Defendant's convictions for fraud, securities fraud, and failure to register a security. We reverse Defendant's conviction for embezzlement because it is inconsistent with and excluded by his conviction for fraud. We therefore remand with instructions to vacate the embezzlement conviction and re-sentence Defendant consistent with this opinion.

{39} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and IRA ROBINSON, Judges.