This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36621**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**DANIEL GOLDBERG, SR.,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Sandra A. Price, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**IVES, Judge.**

**{1}** Defendant Daniel Goldberg Sr. appeals his convictions, after a jury trial, for two counts of fraud, one a fourth-degree felony and one a petty misdemeanor, in violation of NMSA 1978, Section 30-16-6 (2006). He argues, pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, that the district court erred by refusing to instruct the jury on his theory that he received the money at issue legitimately, rather than fraudulently, pursuant to a contract under which he was a third-party beneficiary. We affirm.

**BACKGROUND**

**{2}** Goodfella's Bail Bonds hired Defendant, a fugitive recovery agent, to locate a Goodfella's client named Nicolette Morris after she failed to appear for a traffic court case. Upon locating Morris, Defendant drove her to a bank and collected $1,050 from her, which he told her consisted of $950 for his fugitive recovery fee and $100 to re-post a bond for her. Morris thereafter paid Defendant an additional $800 in four weekly installments of $200.

**{3}** At trial, the State's primary theory was that Defendant fraudulently obtained Morris's payments by misrepresenting to her that she owed him the $100 as a fee to re-post a bond, and the $800 as repayment for her prior bond although no new bond was ever posted and the original bond had been exonerated.

**State's Theory Regarding the $100**

**{4}** Morris testified that she had given Defendant the $100 to pay what she understood to be a fee associated with either re-posting her original bond or to post a new $1,000 bond. Morris explained that Defendant told her, while driving them to her bank to withdraw the money, that he needed the $100 to re-post her bond so that she could stay out of jail. However, no new $1,000 bond was ever posted.

**{5}** At a later court date, Morris spoke with her public defender, and determined that her $100 bench warrant fee, owed to the court under NMSA 1978, Section 35-6-5(B) (1993), was never paid. Morris thought Defendant had taken care of that fee with the money she had given him. However, the $100 bench warrant fee was never paid to the court.

**State's Theory Regarding the $800**

**{6}** Following her initial $1,050 payment to Defendant, Morris had paid an additional $800 to him in weekly $200 installments between April 10 and May 1, 2015. Morris testified that she had believed—because Defendant had told her so—that Defendant would have a warrant issued for her arrest unless she made these payments to Defendant to repay her bond. Morris testified she would not have paid the money to Defendant if she had known that it was not for her bond, as she was led to believe by Defendant's statements. On May 8, 2015, the court exonerated Morris's original $650 bond, and the court never required Morris to post a $1,000 bond.

**{7}** After speaking with her public defender about the missing $100 bench warrant fee, Morris stopped paying Defendant. Morris, her public defender, and a detective called Defendant to ask why Morris had to continue to pay him. Defendant responded that her bond was revoked, his company wrote a new bond, and if she did not continue to pay him, he would have the bond revoked. The State played a recording of the call for the jury at trial. At the time of the call, her bond was exonerated, so there was no bond to be revoked.

**Defense's Theory**

{8}     Defendant's theory was that, as a third-party beneficiary of the contract between Goodfella's and Morris, he was legally entitled to collect all of the money as payment toward his fugitive recovery fee—over $4,000 because of costs incurred in finding Morris. Defendant testified that he had collected the $100 as partial down payment toward the fee and the $800 pursuant to a payment plan for the fee that he had agreed upon with Morris. Defendant further argued that receipt of payments from Morris was permitted under contract law because he was assigned an interest on Morris's bond.

{9}     At trial, Defendant requested a jury instruction based on UJI 13-820 NMRA, a civil instruction pertaining to the enforcement of a contract by a third-party beneficiary. The instruction requires the third-party beneficiary to demonstrate that he is an intended beneficiary of the contract he seeks to enforce, rather than a mere incidental beneficiary of the contract. *Id.* Defendant argued that the instruction was necessary to clarify that Defendant was entitled to collect his fee from Morris directly under contract law. The court denied the jury instruction and expressed concern that raising the issue of third-party beneficiary status would create confusion over whether a valid contract existed. The court did permit Defendant to argue his third-party beneficiary status during closing arguments.

{10}    The jury convicted Defendant on the petty misdemeanor fraud count on the basis of the $100 payment and the fourth-degree felony fraud count on the basis of the four $200 payments. He appeals.

**DISCUSSION**

{11}    Defendant sought the third-party beneficiary instruction to advance his theory of the case. Whether denial of a jury instruction was proper is a mixed question of law and fact reviewed de novo. *State v. Baxendale*, 2016-NMCA-048, ¶ 10, 370 P.3d 813. "A defendant is entitled to an instruction on his or her theory of the case if evidence has been presented that is sufficient to allow reasonable minds to differ as to all elements of the offense." *Id.* (internal quotation marks and citation omitted). However, Defendant's theory that he was a third-party beneficiary was a matter for argument to the jury, not for a jury instruction. *See State v. Hornbeck*, 2008-NMCA-039, ¶ 27, 143 N.M. 562, 178 P.3d 847 (holding that the "[d]efendant's jury instruction that a debtor-creditor relationship with a subsequent failure to repay the loan does not in itself constitute fraud was a matter to be argued to the jury, rather than included in a jury instruction" and recognizing that "jury instructions should not comment on the evidence and that argument and explanation are best left to counsel"). The district court allowed Defendant to present his defenses regarding his third-party beneficiary status and other aspects of contract law during closing arguments. By allowing such argument, the district court gave Defendant an adequate opportunity to present his theory of the case. *See id.* We conclude that the district court's jury instructions regarding fraud, which were based on UJI 14-1640 NMRA, informed the jury of the applicable law and that a third-party beneficiary instruction was not necessary. *See State v. Beal*, 1974-NMCA-

054, ¶ 6, 86 N.M. 335, 524 P.2d 198 ("[A jury i]nstruction should be read as a whole and where other instructions adequately cover the law refusal to give a separate instruction is not error."). It follows that the district court did not err by declining to give the instruction.

**CONCLUSION**

**{12}** We affirm.

**{13}** **IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**KRISTINA BOGARDUS, Judge**