2002-NMCA-092

52 P.3d 974

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**James M. CURRY IV, Defendant– Appellant.**

**No. 22,028.**

Court of Appeals of New Mexico.

April 25, 2002.

Certiorari Denied, No. 27,528, June 10, 2002.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Appellee.

James M. Curry IV, Albuquerque, NM, for Appellant.

## OPINION

CASTILLO, Judge.

{1} The formal opinion filed in this case on March 15, 2002, is hereby withdrawn and the following opinion is substituted. Defendant James Curry's motion for rehearing is denied. Defendant appeals his convictions of embezzlement and fraud, and the denial of his motion for a new trial. We affirm.

## BACKGROUND

{2} Defendant began practicing law in 1981. During the time material to this case, Defendant was legal counsel for Maxima Collection Systems (Maxima), a company owned by Kenneth L. Peterson. Defendant and Peterson had been friends for almost 25 years. During that time, Defendant provid-

ed legal services to Peterson, they had business dealings with each other and they socialized together including the frequenting of casinos. At trial, Peterson's version of events departed significantly from Defendant's version. The following summary of facts is primarily based on Peterson's testimony.

{3} In May 1998, Peterson fired Defendant as legal counsel for Maxima and requested the return of his retainer and any funds recovered by Defendant. Because Defendant had not kept an accurate accounting, they agreed that $5700 would cover the amount owed. Defendant wrote a check from his law office trust account to Peterson for $5700 with a notation on the check stating "refund balance on retainer" (the $5700 check). When Defendant delivered the $5700 check, he asked Peterson to loan him $1000 to pay his employees. Peterson, relying on Defendant's representations that the $5700 check was good and that he would be repaid, wrote a check on the Maxima account to Defendant for $1000. Peterson deposited the $5700 check in his bank account; it was returned for insufficient funds. Defendant cashed the $1000 check.

{4} The State charged Defendant with embezzlement and fraud. At a bench trial, the court found Defendant guilty of both charges. Defendant filed a motion requesting a new trial based on newly discovered evidence and the trial court denied it. Defendant argues that the trial court erred in weighing the evidence, that there is not substantial evidence to support his convictions, and that his motion for a new trial should have been granted.

## DISCUSSION

### I. Weighing of Evidence

{5} Defendant argues that the trial court erred in weighing the evidence and that his version of facts should have been adopted by the trial court. Defendant claims that "there are at least two innocent theories and the guilty one the court chose." We remind Defendant that in a bench trial, the court, not counsel, weighs the evidence. Further, this Court does not reweigh the evidence nor substitute its judgment for that of the trial court provided there is sufficient evidence to support the convictions. *See State v. Estrada*, 2001–NMCA–034, ¶¶ 40–41, 130 N.M. 358, 24 P.3d 793.

{6} We review Defendant's claim under a substantial evidence standard of review. *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). The evidence is viewed in the light most favorable to the State and all conflicts are resolved in favor of the verdict. *Estrada*, 2001–NMCA–034, ¶ 40, 130 N.M. 358, 24 P.3d 793. The trial court summed up the testimony of Peterson and Defendant and believed Peterson's version of the facts based on his credibility. *See In re Ernesto M. Jr.*, 1996–NMCA–039, ¶ 15, 121 N.M. 562, 915 P.2d 318 ("It was for the [trial] court as fact finder to resolve any conflict in the testimony of the witness and to determine where the weight and credibility lay."). Defendant is clearly unhappy about the trial court's view of the evidence; this is not grounds for reversal. We affirm Defendant's convictions based on the following analysis.

### II. Substantial Evidence on Embezzlement Conviction

{7} On the issue of embezzlement, Defendant's amended brief in chief is essentially a rationale for his actions, the same rationale he presented unsuccessfully at trial. Although it is somewhat difficult to follow Defendant's contentions, we understand him to argue that there is insufficient evidence to convict him of embezzlement. Urging reversal, Defendant offers the following explanations for his actions: he wrote the $5700 check as an "antecedent civil debt and its worthlessness [i]s irrelevant ...";  the $5700 check is irrelevant because it is a "restitution check" for a personal debt to Peterson; Peterson put him under duress which caused Defendant to write the $5700 check; and this is a civil problem, therefore, it cannot be a criminal action.

{8} Evidence is sufficient to support a conviction when substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction. *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319. The evidence

is viewed in the light most favorable to support the verdict by resolving all conflicts and indulging all permissible inferences in favor of upholding the verdict. *Id.* Using this standard, we review the conviction.

{9} In order to find Defendant guilty of embezzlement, the State had to prove beyond a reasonable doubt that (1) Defendant was entrusted with over $2500; (2) Defendant converted this property to his own use; and (3) at the time Defendant converted the property, Defendant fraudulently intended to deprive the owner of the owner's property. NMSA 1978, § 30–16–8 (1995). " 'Entrustment' occurs when property is committed or surrendered to another with a certain confidence regarding the care, use, or disposal of that property." *State v. Archie,* 1997–NMCA–058, ¶ 4, 123 N.M. 503, 943 P.2d 537. Peterson testified that he gave Defendant money up front to handle his cases and, in addition, Defendant also kept money that was recovered on some of the judgments he collected. Peterson also testified that although he never received an accounting, he and Defendant agreed that the amount owed to him when he asked for his money back was $5700. Defendant denied that he owed Peterson any money as a retainer but he admitted owing Peterson what he termed "a civil debt" of $5700 for money to play at a casino and for a car loan. In spite of the fact that Defendant characterized the debt as personal, the parties stipulated that Defendant wrote a check for $5700 out of his law office trust account to Peterson. A notation placed on the $5700 check written by Defendant read "refund balance on retainer."

{10} The second element to be proven is that Defendant converted the money to his own use. Conversion occurs when a person who has been entrusted with another's property treats the property as his own and uses it for his own purpose. *Archie,* 1997–NMCA–058, ¶ 8, 123 N.M. 503, 943 P.2d 537. After firing Defendant, Peterson asked for his retainer back. Fraud investigator Jasler testified that the check written to Peterson for $5700 was returned for insufficient funds. Consequently, Defendant did not return the funds as demanded by Peterson; thus, he converted the property. *State v. Moss,* 83 N.M. 42, 45, 487 P.2d 1347, 1350 (Ct.App.1971) (stating that "[p]roof of a demand and a failure to return the property may be evidence of embezzlement because such proof is material to the questions of conversion").

{11} The third element is fraudulent intent to deprive the owner of his property. Fraudulent intent is defined as the intent to cheat or deceive and may be inferred by reasonable inferences and circumstantial evidence. *Archie,* 1997–NMCA–058, ¶ 10, 123 N.M. 503, 943 P.2d 537; *State v. Ortiz,* 90 N.M. 319, 322, 563 P.2d 113, 116 (Ct.App.1977). The trial court could have concluded that Defendant intended to deprive Peterson of his money because Defendant himself admitted that he kept no records of Peterson's account and further, he knew the trust account had inadequate funds to cover the $5700 check when he wrote it. *See Archie,* 1997–NMCA–058, ¶ 10, 123 N.M. 503, 943 P.2d 537 (finding a reasonable inference that defendant fraudulently intended to deprive the State of its electronic monitoring device by removing it and throwing it away when he knew that he was not to dispose of it); *State v. Hoeffel,* 112 N.M. 358, 361–62, 815 P.2d 654, 657–58 (Ct.App.1991) (showing of sufficient intent by circumstantial evidence that tenant intended to deprive landlady of furniture by removing furniture without her permission from a furnished house he rented from her, telling her the furniture was in a safe place, and saying he would return it to her after she asked for it back); *Ortiz,* 90 N.M. at 322, 563 P.2d at 116 (proving intent by reasonable inference that Defendant, who told agents that his drug source would not deal with him if anyone was watching intended to deprive drug enforcement agents of $500 when he disappeared with the money after being instructed by agents to return after meeting the source).

{12} Based on the foregoing, there is sufficient evidence to support Defendant's conviction of embezzlement. *Sutphin,* 107 N.M. at 131, 753 P.2d at 1319.

### III. Substantial Evidence on Fraud Conviction

{13} Defendant denies having committed fraud; his amended brief in chief lists excuses for his behavior. Again, we have difficulty in following the contentions in Defendant's amended brief in chief. Because we believe Defendant is arguing that there is insufficient evidence to convict him of fraud, we use the same standard of review for evaluating evidence presented for the fraud claim as we did for the embezzlement claim. To convict Defendant of fraud, the State must prove beyond a reasonable doubt that Defendant intentionally misappropriated or took something of value belonging to another by means of fraudulent conduct, practices, or representations. NMSA 1978, § 36–16–6 (1987). A conviction stands if there is evidence of either a direct or circumstantial nature to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to the conviction. *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319.

{14} Peterson testified that Defendant asked to borrow $1000 in order to pay his employees and represented that the $5700 check was good and that he would repay Peterson the $1000. Based on Defendant's representations, Peterson wrote Defendant a check for $1000 from the Maxima account. Defendant cashed it. Peterson testified that after he had given Defendant the check, Defendant did not use it to pay his employees but went to a casino and cashed it, and further that the $5700 check bounced. From this evidence, the trial court could infer that Defendant intended to defraud Peterson. *See Ortiz*, 90 N.M. at 322, 563 P.2d at 116. We affirm.

{15} As a defense Defendant argues that if the loan were paid back, he would not be guilty of fraud relying on *Commonwealth v. Moreton*, 48 Mass.App.Ct. 215, 719 N.E.2d 509, 511 (1999). Defendant does not cite to any New Mexico cases for his defense. New Mexico cases clearly state that repayment does not negate the crime of fraud and that the crime occurs at the time of the taking or misappropriation. *State v. McCall*, 101 N.M. 32, 33, 677 P.2d 1068, 1069 (1984); *State v.*

*Thoreen*, 91 N.M. 624, 628, 578 P.2d 325, 329 (Ct.App.1978).

### IV. Motion for New Trial

{16} Defendant's arguments urging a new trial are twofold. He first complains that he was deprived of the opportunity to present the testimony of his former partner, Charles Reid. He argues that the trial court limited the trial to two hours, and did not inform Defendant of this limitation until the middle of the morning. Therefore, when Defendant called Reid at 10:45 a.m. and he was not available, Defendant argues that the time limitation imposed by the trial court prevented him from presenting his case. Defendant admits that the record does not show he requested a continuance from the trial court but he argues that any conversation with the court regarding the continuance "must have been off the record." Failure to object at trial prohibits the raising of an issue on appeal. *See State v. Duncan*, 117 N.M. 407, 412, 872 P.2d 380, 385 (Ct.App.1994); *State v. Lopez*, 105 N.M. 538, 546, 734 P.2d 778, 786 (Ct.App.1986). Therefore, this issue was not properly preserved for review.

{17} Defendant also argues that the trial court erred in its denial of his motion for a new trial based on newly discovered evidence, i.e., the testimony of Reid. The State counters that the motion was properly denied because Defendant, who is an experienced attorney, did not adequately prepare for trial as shown by not having subpoenaed Reid, by not reviewing the District Attorney's file that contained a report by an investigator of what Peterson was going to testify to at trial, and by not reviewing the grand jury tapes that contained Jasler's testimony about discussions with Peterson. Reid was the same witness that Defendant tried to call at trial but who was not available to testify; consequently, it defies logic to characterize his testimony as "newly discovered evidence." Nevertheless, the trial court evaluated the motion and denied it. We now evaluate the trial court's order.

{18} The general rule is that a motion for a new trial is not favored and this Court will only reverse a denial of a motion for new trial upon a showing of a clear abuse

of discretion by the trial court. *State v. Stephens,* 99 N.M. 32, 35, 653 P.2d 863, 866 (1982). Specifically, a denial of a motion for a new trial based on newly discovered evidence must meet six requirements in order to be granted. *State v. Shirley,* 103 N.M. 731, 733, 713 P.2d 1, 3 (Ct.App.1985). The requirements are as follows: (1) it will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it could not have been discovered before the trial by the exercise of due diligence; (4) it must be material; (5) it must not be merely cumulative; and (6) it must not be merely impeaching or contradictory. *Id.*

{19} Because Defendant's "newly discovered evidence" clearly fails the second and third requirements of *Shirley,* the motion was properly denied. Defendant knew that Reid existed and what Reid would possibly testify to before the trial. The trial court allowed Defendant to telephone Reid and it was then that Defendant told the trial court that the witness would not be able to testify because of the short notice from the court. The trial court reminded Defendant that basic trial preparation dictates the use of subpoenas which would have insured Reid's presence at trial and pointed out that Reid and Defendant had known about this trial for a long time. In explaining its decision, the trial court again pointed out that Defendant is an experienced attorney, should have at least subpoenaed Reid and it was this lack of due diligence in not having subpoenaed Reid that caused Reid to not testify. The trial court did not abuse its discretion in denying Defendant's motion for a new trial based on newly discovered evidence.

{20} While this is a criminal matter, we cannot help but comment on certain troubling aspects of the case. First, this is a prime example of why lawyers should keep accurate records of funds received by and work done for all clients, including long time friends. Had Defendant kept accurate records, there might have been support for his theory of the case. More importantly though, our rules of professional conduct require accurate record keeping. Rule 16–115(B) NMRA 2002. Secondly, this whole situation would have been avoided had Defendant kept his trust account balanced and segregated as required by Rule 16–115(A). The trial court was clearly unimpressed with Defendant's handling of his trust account and explained the following: "a trust account, whether it is used a lot or used for certain things is just that. It's a trust account[.] [A]nd it's other people's money that's in there, not the attorney's money, until they earn it and write it out of the trust account to their other account." Defendant is an experienced attorney. Consequently, we remain mystified by Defendant's total disregard of the law governing checking accounts in general and trust accounts in particular.

{21} Finally, this case illustrates the folly of representing oneself. It is clear from the transcript that Defendant did not engage in the normal trial preparation. Defendant did not review the grand jury testimony of the State's witnesses nor did he review the documents made available by the State. Defendant did not subpoena witnesses and yet complains that the trial court prevented his witness from testifying. Defendant then attempts to take another bite at the apple by requesting a new trial. It is too late. Defendant has chosen to represent himself and he has done so at his own peril.

**CONCLUSION**

{22} We affirm the trial court. There was sufficient evidence to support Defendant's convictions on embezzlement and fraud. The trial court properly denied Defendant's motion for a new trial.

{23} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and IRA ROBINSON, Judges.