**Certiorari Denied, December 7, 2015, No. 35,584**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2016-NMCA-006**

**Filing Date:  October 5, 2015**

**Docket No. 32,838**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**GREGORY M. HOBBS,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Freddie J. Romero, District Judge**

Hector H. Balderas, Attorney General
Paula E. Ganz, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VANZI, Judge.**

**{1}** Defendant Gregory Marvin Hobbs appeals his conviction for voluntary manslaughter with a firearm enhancement, contrary to NMSA 1978, § 30-2-3(A) (1994), and NMSA 1978, § 31-18-16(A) (1993). Defendant raises three issues, which we have reorganized and address as follows: (1) whether Defendant's right to a public trial was violated when the district court partially closed the courtroom during the testimony of one of his witnesses, (2) whether

Defendant received ineffective assistance of counsel, and (3) whether the district court erred in denying Defendant's request for a new trial. We affirm.

## BACKGROUND

**{2}** It is undisputed that Defendant shot and killed Ruben Archuleta, Jr. (Ruben Jr.) and Ruben Archuleta, Sr., also known as Hammer (Victim), during an altercation that occurred on June 15, 2012. The State did not prosecute Defendant for Ruben Jr.'s death because it determined that the killing of Ruben Jr. was legally justified. Defendant was, however, charged with and convicted for voluntary manslaughter for causing Victim's death. Defendant appeals his conviction and raises three independent issues. The facts relevant to each issue will be discussed below.

## DISCUSSION

### Courtroom Closure

**{3}** Britini S., a minor, witnessed the struggle between Defendant and Victim. She testified at Defendant's preliminary hearing and was later subpoenaed by Defendant to testify at his trial. Defendant considered Britini's testimony to be crucial to his theory of self-defense.

**{4}** Britini failed to appear on the first day of trial, so the district court issued a bench warrant for her arrest. After her father called the judge's chambers to express concern for his daughter's safety, the judge held a conference regarding the conditions under which Britini would testify. The judge and counsel for the State and Defendant interviewed Britini in the presence of Defendant and Britini's mother.

**{5}** Britini, who was six and one-half months pregnant at the time of trial, explained that she was not comfortable testifying in front of an audience because she feared retaliation from Victim's family. She stated that approximately two weeks after she testified at the preliminary hearing she was physically assaulted by a girl whom she did not know, but who was with two of Victim's sons. Britini informed the court that she was afraid that she would not be able to defend herself if she were attacked again due to her pregnancy, and she felt like she had to watch her back. Likewise, Britini's mother expressed concern for Britini's safety and the safety of her unborn grandchild.

**{6}** Defense counsel proposed that Britini be deemed unavailable and suggested that Britini's testimony from the preliminary hearing be admitted in lieu of testimony at the trial. The State agreed that Britini's fear of retaliation was reasonable because her attacker had been in the company of Victim's sons. However, the State opposed using Britini's testimony from the preliminary hearing and argued that the situation did not rise to the level of deeming Britini unavailable. The judge also expressed his concern for Britini's safety but stated that he did not think that he had the authority to exclude the public from the

2

proceedings. In response, defense counsel asked the judge, "[n]ot even upon stipulation of the parties[,] your honor?" Counsel then stated that "the defense would be happy to stipulate for the purpose of her testimony that the court could be cleared . . . of everyone but the bailiffs [and] parties[.]" The State also agreed to the stipulation.

**{7}**    The judge and counsel for the State and Defendant discussed Defendant's rights, Victim's rights, the public's rights, and how these rights could be affected if the district court agreed to partially close the courtroom during Britini's testimony. After careful consideration, and based upon the parties' stipulation to a partial closure of the courtroom, the district court decided to exclude members of Victim's *and* Defendant's families from the courtroom while Britini testified. The judge explained to Britini that he would exclude Victim's and Defendant's families while she testified but that he could not seal the courtroom. The judge further said that if someone from the newspaper was in the audience, the attorneys could ask that person "[t]o give some consideration so that [her] name [was not published] in the newspaper." The following day, Britini testified on behalf of Defendant. Her testimony and the partial courtroom closure lasted less than twenty minutes.

**{8}**    On appeal, Defendant argues that the partial courtroom closure during Britini's testimony violated his Sixth Amendment right to a public trial, despite the fact that his defense counsel stipulated to the closure. He claims that the unconstitutional closure constitutes structural error requiring a new trial. He further argues that structural errors are subject to a relaxed preservation requirement and that they are not subject to a harmless error analysis. The State, on the other hand, asserts that Defendant did not preserve this issue for appellate review, that Defendant stipulated to the closure, and that Defendant's stipulation has the effect of a waiver of this issue on appeal.

**{9}**    "In a criminal trial, the accused shall enjoy the right to a speedy and public trial." *State v. Turrietta*, 2013-NMSC-036, ¶ 1, 308 P.3d 964 (citing U.S. Const. amend. VI; N.M. Const. art. II, § 14). The right to a public trial, however, "is not absolute and may give way in certain cases to other rights or interests." *Id.* Whether Defendant's constitutional rights were violated is a question of law and, therefore, our review is de novo. *Id.* ¶ 14.

**{10}**    As an initial matter, Defendant appears to concede that he did not preserve this issue for appellate review, and we agree. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]"); *see also State v. Vandenberg*, 2003-NMSC-030, ¶ 52, 134 N.M. 566, 81 P.3d 19 ("In analyzing preservation, we look to the arguments made by Defendant below."); *State v. Jacobs*, 2000-NMSC-026, ¶ 12, 129 N.M. 448, 10 P.3d 127 ("In order to preserve an issue for appeal, it is essential that a party must make a timely objection that specifically apprises the [district] court of the claimed error and invokes an intelligent ruling thereon."). Despite Defendant's failure to preserve his Sixth Amendment claim, however, we address his assertion that the alleged unconstitutional closure violates his right to a public trial and constitutes a structural error requiring a new trial. *See Waller v. Georgia*, 467 U.S. 39, 49 (1984).

3

**{11}** "A structural error is a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *State v. Nguyen*, 2008-NMCA-073, ¶ 9, 144 N.M. 197, 185 P.3d 368 (internal quotation marks and citation omitted). "If a hearing is closed in violation of the Constitution, the denial of the right to a public trial is a structural error; thus, it is not subject to a harmless error analysis." *State v. Hood*, 2014-NMCA-034, ¶ 6, 320 P.3d 522. Therefore, if Defendant's right to a public trial was violated, such error would be a structural error.

**{12}** When determining the constitutionality of a courtroom closure, our Supreme Court in *Turrietta* adopted the "overriding interest" standard, discussed by the United States Supreme Court in *Waller*, 467 U.S. 39, and *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984). *See Turrietta*, 2013-NMSC-036, ¶¶ 17, 19. In *Waller*, the United States Supreme Court held that a closure "over the objections of the accused" must meet the following "overriding interest" four-pronged test:

> [1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the [district] court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure.

*Waller*, 467 U.S. at 47-48.

**{13}** Defendant asserts that none of these prongs were satisfied. Specifically, he argues that: (1) neither party demonstrated an overriding interest for the closure; (2) the closure was overly broad; (3) the district court failed to adequately assess possible alternatives to closure; and (4) the district court failed to make adequate findings to support closure. Conversely, the State contends that the four prongs were met in this case. It contends that: (1) Britini's safety and the safety of her unborn child were the overriding interests for the closure; (2) the partial closure was not overly broad in scope or duration; (3) the district court considered alternatives and determined that the partial closure was the best option; and (4) the district court interviewed Britini and her mother in the presence of counsel for Defendant and the State and made sufficient factual findings to support the closure. For the reasons that follow, we conclude that Defendant waived his right to a public trial when his attorney expressly consented to the partial courtroom closure during Britini's testimony. Therefore, his structural error argument fails and consideration of the "overriding interest" standard is not required. We explain.

**{14}** "Fundamental rights, including constitutional rights, can be waived." *State v. Singleton*, 2001-NMCA-054, ¶ 11, 130 N.M. 583, 28 P.3d 1124. While "[s]ome rights are considered so personal to the defendant they necessitate inquiry into the individual defendant's decision-making process[,] . . . [o]ther rights generally pertaining to the conduct of trial may be waived through counsel and without an inquiry on the record into the validity of the waiver." *Id.* ¶ 12. "Defense attorneys make a wide variety of tactical decisions during

4

the course of a criminal trial, and many of these decisions implicate the constitutional rights of a defendant." *Nguyen*, 2008-NMCA-073, ¶ 24. "A personal waiver by the defendant is not required for all of these decisions." *Id.* Furthermore, the United States Supreme Court has "uniformly recognized the public-trial guarantee as one created for the benefit of the defendant." *Presley v. Georgia*, 558 U.S. 209, 213 (2010) (internal quotation marks and citation omitted). The right to "a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned," and "encourages witnesses to come forward [while] discourag[ing] perjury." *Waller*, 467 U.S. at 46 (internal quotation marks and citations omitted); *see also Peretz v. United States*, 501 U.S. 923, 936 (1991) (recognizing that a defendant may waive most basic rights, including his or her right to a public trial); *Levine v. United States*, 362 U.S. 610, 611, 619-20 (1960) (holding that the defendant's due process and public trial rights were not violated after the public had been excluded from the courtroom, in what began as a grand jury proceeding and continued as a hearing for the defendant's criminal contempt; the Supreme Court noted that the defendant made no request at any time to open the courtroom and simply "raise[d] an abstract claim only as an afterthought on appeal").

**{15}** In this case, Defendant believed that Britini's testimony was critical and would bolster his theory of self-defense. But Britini did not want to testify in front of an audience because she feared retaliation from Victim's family. After the district court denied defense counsel's request to use her preliminary hearing testimony in lieu of having her testify at trial, defense counsel proposed closing the courtroom for Britini's testimony. Counsel further stated that Defendant would stipulate to excluding everyone from the courtroom except the bailiffs and parties. Defendant was present when his attorney proposed this stipulation, and there is no indication in the record that he objected to it. Based on these facts, it is clear that Defendant waived his right to a public trial when his counsel expressly stipulated to—and even encouraged—the partial courtroom closure. *See Knighten vs. Commandant*, 142 Fed. Appx. 348, 351 (10th Cir. 2005) (unpublished) (holding that the defendant's counsel's express waiver of objection to the trial court's closure of courtroom during the victim's testimony during court-martial on criminal charges precluded review of claim on military prisoner's application for writ of habeas corpus); *id.* ("The right to a public trial . . . may be waived, so long as the waiver is knowing and intelligent. . . . Counsel can waive the right on behalf of a client, at least in the absence of an objection by the client." (citations omitted)); *see also Addai v. Schmalenberger*, 776 F.3d 528, 533 (8th Cir. 2015) ("A defendant may certainly consent to the closure of the courtroom if he believes it to be in his favor, and if he chooses to do so, he can hardly claim on appeal that the closure violated his Sixth Amendment right."); *Crawford v. Minnesota*, 498 F.3d 851, 855 (8th Cir. 2007) (stating that, in Minnesota, a defendant's passive failure to object to closing the courtroom does not waive compliance with the public trial mandates set forth by statute and *Waller*, "[b]ut if the defendant acting through his attorney agrees to closure (and assuming no member of the public lodges a First Amendment objection), the issue is procedurally defaulted on appeal"). Given that defense counsel did not object to the partial courtroom closure during Britini's testimony and affirmatively encouraged it, Defendant is in no position to now claim that his Sixth Amendment right to a public trial was violated.

**{16}**     Because we conclude that Defendant expressly consented to the closure to make his witness feel more comfortable during her testimony, we need not determine whether the *Waller* "overriding interest" four-pronged standard was met. *See Waller*, 467 U.S. at 47 (holding that, under the Sixth Amendment, a courtroom closure must meet the four-prong test when the accused has objected to the courtroom closure); *see also Addai*, 776 F.3d at 534 (explaining that, in a case where the defendant expressly consents to a courtroom closure, the court is not required to balance the interests described in *Waller*). Accordingly, we affirm on this issue.

**Ineffective Assistance of Counsel**

**{17}**     Defendant claims that he received ineffective assistance of counsel because his attorney failed to retain or call an expert on bullet trajectories. Defendant contends that such expert testimony could have corroborated his self-defense theory and effectively rebutted the State's evidence. Defendant raises this issue as an alternative to his newly discovered evidence argument, which we discuss later in this Opinion.

**{18}**     It is well established that criminal defendants have a constitutional right to effective assistance of counsel. *See Patterson v. LeMaster*, 2001-NMSC-013, ¶ 16, 130 N.M. 179, 21 P.3d 1032 ("The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees not only the right to counsel but the right to the effective assistance of counsel." (internal quotation marks and citation omitted))." We review the legal issues involved with claims of ineffective assistance of counsel de novo. . . [and] . . . defer to the findings of fact of the [district] court if substantial evidence supports the court's findings." *State v. Crocco*, 2014-NMSC-016, ¶ 11, 327 P.3d 1068 (citations omitted).

**{19}**     Defendant bears the burden of showing that his counsel's performance was deficient and that he suffered prejudice as a result of the deficiency. *See State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *Id.* "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition[.]" *Id.*; *see also State v. Herrera*, 2001-NMCA-073, ¶ 37, 131 N.M. 22, 33 P.3d 22 ("When the record on appeal does not establish a prima facie case of ineffective assistance of counsel, this Court has expressed its preference for resolution of the issue in habeas corpus proceedings over remand for an evidentiary hearing.").

**{20}**     Here, the jury convicted Defendant of voluntary manslaughter on February 1, 2013. On February 14, 2013, defense counsel filed a motion for a new trial and asserted that, while preparing for a different trial on February 6, 2013, she discovered that Nelson Welch, an expert witness whom she had retained in a different case, is qualified to give expert opinions regarding situations where two people are struggling over a weapon, as well as weapon discharges, trajectory, and angles of bullets. Had she known about his expertise in this area

6

before Defendant's trial, defense counsel says she would have hired Welch to testify on behalf of Defendant because he would have provided useful information central to Defendant's theory of self-defense. For the reasons that follow, we are not persuaded that defense counsel's failure to hire Welch rises to the level of ineffective assistance of counsel.

**{21}**     Even if Defendant could show that counsel's performance was deficient because there was no tactical or strategic basis for failing to retain or consult with Welch or another trajectory expert, *see State v. Aragon*, 2009-NMCA-102, ¶¶ 9-15, 147 N.M. 26, 216 P.3d 276, Defendant "must demonstrate that his counsel's errors prejudiced his defense such that there was a reasonable probability that the outcome of the trial would have been different." *Id.* ¶ 16 (internal quotation marks and citation omitted). In the present case, Defendant claims that he suffered prejudice as a result of counsel's failure to call an expert witness to corroborate his theory of self-defense; however, there is no evidence in the record that the outcome would have been different if counsel had retained or called a trajectory expert to testify on his behalf. To the contrary, Dr. Sam Andrews from the Office of the Medical Investigator (OMI) testified regarding the path of the bullets through Victim's body, including that the fatal bullet was shot very close to the body and from a position above Victim's chest. Further, there was evidence presented regarding the struggle between Defendant and Victim for the firearm, which would have supported Dr. Andrews' testimony. Other than being possibly cumulative or contradictory, Defendant does not show a probability that an expert's testimony regarding a struggle for a firearm and the trajectory of bullets would change the outcome if a new trial was granted.

**{22}**     Defendant's claim of prejudice is based on mere speculation. Without specifying what an expert would have testified to, Defendant asserts that the expert "could have provided useful information . . . central to the theory of defense[;]" "could have reviewed Dr. Andrews' analysis to confirm or contest his findings[;]" "could have corroborated Dr. Andrews' theories if accurate, and if contradictory, would have provided necessary assistance for effective cross-examination of those theories" and "could have offered scientific evidence" that would have bolstered his self-defense theory. This conjecture is not enough to establish prejudice. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice.").

**{23}**     Therefore, we conclude that Defendant has not established a prima facie case of ineffective assistance of counsel. *See State v. Grogan*, 2007-NMSC-039, ¶ 11, 142 N.M. 107, 163 P.3d 494 ("The defendant has the burden to show both incompetence and prejudice."). Absent a prima facie case of ineffective assistance of counsel, Defendant's remedy is through habeas proceedings. *State v. Martinez*, 1996-NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31 (stating that "[t]his Court has expressed its preference for habeas corpus proceedings over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel").

**Denial of Request for New Trial**

**{24}** Defendant asserts that the district court abused its discretion in denying his request for a new trial on three grounds: (1) juror bias, (2) newly discovered evidence, and (3) the district court's failure to instruct the jury regarding the timing of a break during Defendant's closing argument. "The general rule is that a motion for a new trial is not favored and this Court will only reverse a denial of a motion for new trial upon a showing of a clear abuse of discretion by the trial court." *State v. Curry*, 2002-NMCA-092, ¶ 18, 132 N.M. 602, 52 P.3d 974.

## Juror Bias

**{25}** Defendant asserts that his right to a fair trial was compromised because a juror failed to disclose during voir dire that he knew one of the State's witnesses. *See State v. Johnson*, 2010-NMSC-016, ¶ 35, 148 N.M. 50, 229 P.3d 523 ("The Sixth Amendment of the United States Constitution guarantees defendants the right to trial by a fair and impartial jury and is implicated during voir dire."); *State v. McFall*, 1960-NMSC-084, ¶ 6, 67 N.M. 260, 354 P.2d 547 (emphasizing that the New Mexico Constitution guarantees a trial by an "impartial" jury). Specifically, he contends that the juror concealed that he knew witness Trisha Hart during voir dire.

**{26}** Tricia Hart investigated the crime scene on behalf of the OMI and was called to testify by the State. Prior to testifying, and outside the presence of the jury, Hart disclosed that she knew the juror from church and that the juror probably knew her "as Jerry's wife." Defense counsel stated that she had no objection to the juror, as long as the relationship was not a close and personal one. Although Defendant did not object to the juror at the time, he later argued in his post-trial motion and now on appeal that the district court erred by not asking the juror whether his acquaintance with Hart would affect his impartiality. Additionally, Defendant contends that he would have used a peremptory challenge to excuse the juror if the juror had disclosed his connection to Hart during voir dire. In its response to Defendant's motion for a new trial on this issue, the State attached an affidavit from the juror. The affidavit stated that the juror only realized that he and Hart attended the same church after the conclusion of the trial. It also stated that his verdict and consideration of the evidence was not influenced by any prior knowledge of Hart.

**{27}** While we recognize that "a lone biased juror undermines the impartiality of an entire jury," *State v. Gardner*, 2003-NMCA-107, ¶ 10, 134 N.M. 294, 76 P.3d 47, "Defendant bears the burden to establish that the jury was not fair and impartial, and must demonstrate bias or prejudice on the part of the remaining jurors." *State v. Gallegos*, 2009-NMSC-017, ¶ 22, 146 N.M. 88, 206 P.3d 993. Here, Defendant did not object to Hart's disclosure about the juror and made no attempt to inquire further into any relationship between Hart and the juror. Further, he makes no real argument that the juror was biased nor does he challenge the juror's sworn statement that the juror did not recognize Hart at the time of trial and only realized that they attended the same church when Hart introduced herself on the Sunday after the trial had concluded. Defendant has not come forth with any evidence that the juror recognized or knew Hart during the trial or that they had any relationship requiring the

district court to hold an evidentiary hearing. Accordingly, we hold that Defendant has not sustained his burden of showing that this juror was biased or impartial. *See State v. Mann*, 2002-NMSC-001, ¶ 20, 131 N.M. 459, 39 P.3d 124 ("The essence of cases involving juror . . . bias is whether the circumstance unfairly affected the jury's deliberative process and resulted in an unfair jury."). The district court did not abuse its discretion in denying Defendant a new trial on this basis.

**Newly Discovered Evidence**

**{28}** This is an alternative argument to Defendant's ineffective assistance of counsel claim. It is unclear when counsel learned about Welch's trajectory expertise. In the State's response to the motion for a new trial, the State argued that defense counsel knew about Welch and his expertise before Defendant's trial because Welch had performed an examination of a firearm and viewed evidence in the other case months before Defendant's trial. During the hearing on Defendant's motion for a new trial, defense counsel advised the district court only that she hired Welch as a firearms expert in the other case, Welch has been an expert witness since 1974, and that she did not learn about his trajectory expertise until after Defendant's trial. The district court did not make a finding as to when defense counsel learned about Welch's trajectory expertise. Instead, the district court determined that the proffered expert testimony did not constitute newly discovered evidence or grounds for a new trial. The court based its decision on the fact that defense counsel had already argued trajectory issues in closing argument based on testimony presented to the jury.

**{29}** In his ineffective assistance of counsel claim, Defendant acknowledges that trajectory experts existed before his trial. And he states specifically that his attorney "discovered the usefulness of a bullet trajectory expert in a separate case prior to [Defendant's] trial." Now, however, Defendant claims that this is newly discovered evidence and that his attorney did not learn about trajectory experts until after Defendant's trial and this discovery constitutes newly discovered evidence that warrants a new trial. Defendant cannot have it both ways.

**{30}** A motion for a new trial based on an allegation of newly discovered evidence must meet six requirements to be granted: (1) "it will probably change the result if a new trial is granted;" (2) "it must have been discovered since the trial;" (3) "it could not have been discovered before the trial by the exercise of due diligence;" (4) "it must be material;" (5) "it must not be merely cumulative; and" (6) "it must not be merely impeaching or contradictory." *State v. Garcia*, 2005-NMSC-038, ¶ 8, 138 N.M. 659, 125 P.3d 638 (internal quotation marks and citation omitted).

**{31}** The allegedly newly discovered evidence was Welch, an expert in bullet trajectory who had previously been retained by defense counsel in a separate case. Defendant claims that Welch could have testified about the trajectory in this case and, in particular, the position of Victim's body when the bullets entered his body. According to Defendant, the angle of the lethal shot could have assisted his self-defense argument. We conclude that counsel's realization that a trajectory expert may have bolstered Defendant's theory of self-

9

defense does not constitute newly discovered evidence. *See Curry*, 2002-NMCA-092, ¶¶ 17-19 (holding that the testimony of a witness known before trial, but who was not available at trial, did not constitute newly discovered evidence). Even if defense counsel did not learn about Welch's trajectory expertise until after Defendant's trial, the existence of trajectory experts could have been discovered before trial by the exercise of due diligence. Moreover, because it is unclear what Welch, or another trajectory witness, would have testified, we cannot assess whether the evidence would probably change the result if a new trial is granted or whether the evidence would be material, cumulative, impeaching, or contradictory. *See Garcia*, 2005-NMSC-038, ¶ 8.

**{32}** "Given the wide latitude we provide to district courts in resolving motions for a new trial based on newly discovered evidence, we cannot conclude that an abuse of discretion occurred on these facts." *State v. Gallegos*, 2011-NMSC-027, ¶ 77, 149 N.M. 704, 254 P.3d 655; *see also State v. Sosa*, 1997-NMSC-032, ¶ 16, 123 N.M. 564, 943 P.2d 1017 (explaining that motions for a new trial based on newly discovered evidence are "not encouraged" and the "denial of such a motion will only be reversed if the district court has acted arbitrarily, capriciously, or beyond reason"); *Curry*, 2002-NMCA-092, ¶ 21 (affirming denial of motion for new trial thus rejecting the defendant's attempt to "take another bite at the apple").

**Jury Break**

**{33}** During Defendant's closing argument, the State asked for a bench conference and among other issues, asked the district court to admonish the spectators for their disruptive actions. Following the bench conference, the district court sent the jury out for a break in order to address the trial spectators. The court did not inform the jury of the reason for the break, and Defendant did not object or request a curative instruction to address the timing of the break.

**{34}** After the jury convicted him of voluntary manslaughter, Defendant argued that he was entitled to a new trial because the timing of the break may have left the jury with the impression that defense counsel did or said something inappropriate to cause the break and that the appearance of impropriety prejudiced him. The district court denied Defendant's request for a new trial, and Defendant raises the same argument on appeal.

**{35}** Defendant acknowledges that he did not preserve this issue for appellate review, and he raises this cursory argument as fundamental error pursuant to Rule 12-216(B)(2) NMRA. Parties alleging fundamental error must demonstrate the existence of circumstances that "shock the conscience" or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked. *State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176; *see also State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621, 92 P.3d 633 (providing that fundamental error only occurs in "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused").

10

**{36}** Defendant provides no argument concerning this hypothetically perceived prejudice to him based on the timing of the break and the district court's failure to give a curative instruction. Indeed he contends only that the timing "*might* have led the jury to believe that defense counsel's conduct caused the break." (Emphasis added.) This equivocal statement simply does not rise to the level of fundamental error and does not demonstrate the existence of circumstances that "shock the conscience." Therefore, we hold that the district court did not abuse its discretion in denying Defendant a new trial on this basis.

**CONCLUSION**

**{37}** For the foregoing reasons, we affirm.

**{38}** **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Chief Judge**

_____
**MICHAEL D. BUSTAMANTE, Judge**