**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2023-NMCA-029

Filing Date: October 27, 2022

No. A-1-CA-39734

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**THOMAS C. FERGUSON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Matthew E. Chandler, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Eric D. Dixon, Attorney and Counselor At Law, P.A.
Eric D. Dixon
Portales, NM

for Appellant

**OPINION**

**BOGARDUS, Judge.**

**{1}** Defendant Thomas Ferguson appeals his conviction of embezzlement, contrary to NMSA 1978, Section 30-16-8 (2007). Defendant argues the district court erred by (1) denying his motion for a directed verdict, (2) allowing the State to cross-examine him regarding prior convictions for receiving stolen property, (3) permitting the State to amend the date of the charged offense, and (4) instructing the jury to disregard defense counsel's comments during closing argument relating to the court's dismissal of a separate charge. We affirm.

**BACKGROUND**

**{2}** On December 11, 2019, Joseph White brought a 2008 Chevrolet pick-up truck (the truck) into an automotive shop operated by Defendant for repairs. Defendant told White there was a problem with the transmission, but that he could order one, and White gave Defendant a check for $3,630. The check's memo line stated, "2008 Silver[ado] Transmission." Defendant cashed the check. Over the next several months White regularly checked with Defendant about the truck, and Defendant gave White inconsistent explanations about the transmission's status. On May 1, 2020, White had the truck towed from Defendant's shop. The truck had been damaged and was missing parts. The State charged Defendant with embezzlement and criminal damage to property.

**{3}** At a jury trial, the district court directed a verdict against the State on the criminal damage to property charge; the jury returned a guilty verdict on the embezzlement charge. Defendant appeals.

## I.   The District Court Did Not Err in Denying Defendant's Motion for a Directed Verdict

**{4}** Defendant argues the district court erred as a matter of law in denying his motion for a directed verdict, contending there was insufficient evidence to prove embezzlement. "We review denials of directed verdicts by asking whether sufficient evidence was adduced to support the underlying charge." *State v. Johnson*, 2010-NMSC-016, ¶ 57, 148 N.M. 50, 229 P.3d 523 (internal quotation marks and citation omitted). "Questions of sufficiency that require us to engage in statutory interpretation present a question of law which is reviewed de novo on appeal." *State v. Kalinowski*, 2020-NMCA-018, ¶ 7, 460 P.3d 79 (alteration, internal quotation marks, and citation omitted). "After reviewing the statutory standard, we apply a substantial evidence standard to review the sufficiency of the evidence at trial." *State v. Chavez*, 2009-NMSC-035, ¶ 11, 146 N.M. 434, 211 P.3d 891.

**{5}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* ¶ 53 (alteration, internal quotation marks, and citation omitted). When reviewing for substantial evidence, appellate courts "view[] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Id.* ¶ 52 (internal quotation marks and citation omitted). We also disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We measure the sufficiency of the evidence against the jury instructions given, which become the law of the case. *State v. Jackson*, 2018-NMCA-066, ¶ 22, 429 P.3d 674.

**{6}**     Here, in relevant part, the jury was instructed that to find Defendant guilty of embezzlement the State had to prove beyond a reasonable doubt that Defendant (1) was entrusted with $3,630, (2) converted this money to his own use, and (3) at the time Defendant converted the money, he fraudulently intended to deprive the owner of the owner's property. *See* UJI 14-1641 NMRA. Defendant's arguments address the elements of entrustment and fraudulent intent.

## A.     Entrustment

**{7}**     Defendant argues there was no entrustment, contending that once he received the check on December 12, 2019, the money became his personal property. As a result, Defendant asserts he could not have converted the money because the money was not another's property, as required to sustain an embezzlement conviction. Defendant also asserts that when "theft-temporary taking involves an advance payment of money, the [S]tate must establish a fiduciary relationship" and points out that a mechanic is not a fiduciary. We are unpersuaded.

**{8}**     "While some jurisdictions may require a special fiduciary relationship, such as employment or agency, as an element of the crime [of embezzlement], New Mexico does not." *State v. Archie*, 1997-NMCA-058, ¶ 3, 123 N.M. 503, 943 P.2d 537. New Mexico instead applies the common meaning of "[e]ntrustment," *see State v. Moss*, 1971-NMCA-117, ¶ 6, 83 N.M. 42, 487 P.2d 1347, which "occurs when property is committed or surrendered to another with a certain confidence regarding the care, use, or disposal of that property." *Archie*, 1997-NMCA-058, ¶ 4. However, "[o]ne cannot be guilty of embezzlement if he converts his own property; the property converted must be that of another." *Kalinowski*, 2020-NMCA-018, ¶ 10 (internal quotation marks and citation omitted). We must therefore determine whether the check for $3,630 was White's property, such that Defendant was "entrusted" with it, or whether that money became Defendant's property upon payment, precluding a finding of entrustment.

**{9}**     In the context of advanced payments to a building contractor, this Court has recognized that "[a] building contractor who receives from the landowner an advance payment on the contract and who thereafter spends the money for his own purposes and does not fulfill the contract, is not guilty of embezzlement, *unless the money is earmarked to be used only for a construction purpose*." *Id.* ¶ 13 (emphases added) (internal quotation marks and citation omitted). In *Kalinowski*, for example, this Court concluded that there was insufficient evidence that the down payments of several home purchasers were entrusted to the defendant home builder, reasoning that "at the time [the d]efendant used the deposit money for purposes other than the construction of the [home purchasers'] properties, the deposits already legally belonged to [the d]efendant; he could not be found to have converted the deposits because they were his property—not property of another." *See id.* ¶¶ 10, 13, 16, 35 (internal quotations marks and citation omitted). This Court noted that there was no evidence of an actual agreement or any conversations between the defendant and purchasers specifying the particular purpose for which the down payments were to be used. *See id.* ¶¶ 4-5.

**{10}** Here, by contrast, we conclude there was evidence from which the jury could reasonably infer that the $3,630 had been "earmarked to be used" for a particular purpose, *see id.* ¶¶ 4, 13—ordering a transmission. The jury heard testimony that Defendant told White the truck needed a transmission, then quoted White the cost of a transmission and told White he could order one, and that White gave Defendant a check for "over thirty-six hundred bucks" in response. The jury also heard testimony that White issued the $3,630 check for a replacement transmission itself rather than for both labor and parts, and that this amount did not represent the total amount he would owe Defendant. Based on this testimony, a jury could reasonably infer that White and Defendant shared an understanding that the money had been "earmarked to be used" for the particular purpose of ordering a transmission.

**{11}** In addition, the check that White gave to Defendant stated, in the check's memo line, "2008 Silver[ado] Transmission," and Defendant personally deposited this check. The jury could reasonably infer from this evidence that White had specified in writing that the money was earmarked to be used to order a replacement transmission and that Defendant was aware of this purpose when he received and deposited the check. Disregarding all evidence and inferences that support a different result, and indulging all reasonable inferences in the evidence in favor of the verdict, we conclude that the money did not become Defendant's property upon payment, but rather that the money was "committed or surrendered" to Defendant "with a certain confidence regarding the . . . use[] or disposal of that property." *Archie*, 1997-NMCA-058, ¶ 4. Although we recognize that it is possible to interpret the evidence differently, our task is not to second-guess a reasonable interpretation or substitute our own interpretation of the evidence for the jury's. *See State v. Pitner*, 2016-NMCA-102, ¶ 6, 385 P.3d 665 ("We do not reweigh the evidence or substitute our judgment for that of the fact[-]finder as long as there is sufficient evidence to support the verdict." (internal quotation marks and citation omitted)). Accordingly, under our deferential standard of review, the evidence of entrustment is sufficient.

## B.    Fraudulent Intent

**{12}** Defendant also argues there was insufficient evidence of embezzlement because he never possessed the requisite "fraudulent intent," pointing to his testimony stating as much. We are unpersuaded.

**{13}** "Fraudulent intent is defined as the intent to cheat or deceive and may be inferred by reasonable inferences and circumstantial evidence." *State v. Curry*, 2002-NMCA-092, ¶ 11, 132 N.M. 602, 52 P.3d 974. "The element of intent is seldom susceptible to direct proof and accordingly may be proved by circumstantial evidence." *State v. Dowling*, 2011-NMSC-016, ¶ 22, 150 N.M. 110, 257 P.3d 930 (alteration, internal quotation marks, and citation omitted). Intent "must be proved by the reasonable inferences shown by the evidence and the surrounding circumstances. If there are reasonable inferences and sufficient circumstances then the issue of intent becomes a question of fact for the jury." *State v. Ortiz*, 1977-NMCA-036, ¶ 9, 90 N.M. 319, 563 P.2d 113.

**{14}**    Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence of fraudulent intent is sufficient. A jury could reasonably find that Defendant deprived White of $3,630 with the requisite intent to deceive or cheat. The State presented circumstantial evidence from which the jury could infer Defendant agreed to use the money for a transmission, did not order one despite having over four months to do so, and failed to return the money when asked. The State also presented evidence that Defendant gave White different and inconsistent explanations about the status and location of the transmission—first that the transmission was in his shop and later that he still needed to pick it up. The jury could have reasonably inferred that Defendant was lying to or misleading White, demonstrating his consciousness of guilt. *See State v. Faubion*, 1998-NMCA-095, ¶ 13, 125 N.M. 670, 964 P.2d 834 (looking to the defendants' lies and misleading actions as evidence of their consciousness of guilt in determining whether they possessed the requisite intent to embezzle). Finally, when the truck was towed from Defendant's shop, it was missing parts and its interior had been damaged; the insurance company ultimately declared the truck totaled. A jury could reasonably infer based on the truck's condition upon recovery that Defendant never intended to complete the work for which he was paid. In light of this evidence, a jury could reasonably infer that Defendant surreptitiously used money deposited from the check for his own purposes. Such an interpretation of the evidence supports a finding that Defendant acted with the requisite fraudulent intent. *See Archie*, 1997-NMCA-058, ¶ 10 (concluding that evidence of fraudulent intent was sufficient to support the embezzlement conviction of a defendant who surreptitiously treated property that did not belong to him in a manner contrary to the defendant's promises to the owner). Having concluded there was sufficient evidence to support Defendant's conviction for embezzlement, the district court did not err in denying Defendant's motion for a directed verdict.

**II.      The District Court Did Not Err by Allowing the Prosecutor to Cross-Examine Defendant on Prior Convictions for Receiving Stolen Property**

**{15}**    Defendant next argues the district court erred by allowing the State to recross-examine Defendant regarding his previous convictions that were more than ten years old. Defendant contends the district court misapplied Rule 11-609(B) NMRA because the court did not weigh the specific facts and circumstances necessary to determine whether the convictions' probative value substantially outweighed their prejudicial effect and because the State failed to give written notice of its intent to use those convictions. We are unpersuaded.

**{16}**    Before Defendant took the stand the district court, relying on Rule 11-609, ruled that the State would not be allowed to impeach Defendant for his prior convictions of receiving stolen property. The district court instead allowed the State to impeach Defendant with those convictions in response to Defendant's volunteered statement on redirect related to his prior convictions for stealing. We therefore examine whether the State's use of the receiving stolen property convictions to impeach Defendant was allowed on that basis.

**{17}** The State contends the impeachment was allowed based on the doctrine of curative admissibility, as well as a district court's discretion to admit specific instances of conduct on cross-examination where a defendant has opened the door and the past acts are probative of an issue raised in the defendant's testimony on direct examination. Defendant responds that he did not open the door by making an unsolicited comment and contends his volunteered statement that he had not been convicted of stealing was accurate because receiving stolen property does not involve the actual theft of property. As we explain, we conclude Defendant has not met his burden of demonstrating that the district court's ruling constituted an abuse of discretion.

**{18}** "Curative admissibility is a common law evidentiary doctrine that is still recognized by our courts, despite its lack of codification in our rules of evidence. Under [this] doctrine . . ., a party may introduce inadmissible evidence to counteract the prejudice created by their opponent's earlier introduction of similarly inadmissible evidence." *State v. Gonzales*, 2020-NMCA-022, ¶ 12, 461 P.3d 920 (citations omitted); *see also id.* ¶ 13 (recognizing that "courts typically describe the doctrine of curative admissibility as a conferral of discretion on the trial judge rather than the grant of a right to the party" (alteration, internal quotation marks, and citation omitted)). In addition, "parties may generally impeach misleading evidence introduced by their opponents through specific contradiction." *Id.* ¶ 12 n.3; *see also State v. Hernandez*, 1999-NMCA-105, ¶¶ 8, 19-20, 127 N.M. 769, 987 P.2d 1156 (concluding that the district court did not abuse its discretion in allowing the state to ask the defendant on cross-examination about a prior domestic violence conviction after the defendant's testimony on direct examination implied that the victim had injured herself, reasoning that the state was entitled to introduce evidence to correct the defendant's misrepresentation); *State v. Reed*, 2022-NMCA-025, ¶ 34, 510 P.3d 1261 ("[T]he admission of evidence and the limits on cross-examination fall within the district court's sound discretion."), *cert. denied* (S-1-SC-39187).

**{19}** We presume that the district court did not abuse its discretion in admitting this evidence. *See State v. Campbell*, 2007-NMCA-051, ¶ 9, 141 N.M. 543, 157 P.3d 722 (stating that the district court abuses its discretion when its ruling is "obviously erroneous, arbitrary and unwarranted" or "clearly against the logic and effect of the facts and circumstances before the court" (internal quotation marks and citation omitted)); *State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 ("There is a presumption of correctness in the district court's rulings. Accordingly, it is [the d]efendant's burden on appeal to demonstrate any claimed error below." (alterations, internal quotation marks, and citation omitted)).

**{20}** Defendant's arguments focus on whether the district court misapplied Rule 11-609, which was not the basis for the court's decision to allow the State to recross-examine Defendant regarding his prior receiving stolen property convictions. Although Defendant asserts his volunteered statement—that his convictions for receiving stolen property were not for "stealing"—was not misleading to the jury, we cannot say it was clearly against the logic and effect of the facts and circumstances for the district court to determine that the statement would have, in isolation, been misleading. *See Hernandez*,

1999-NMCA-105, ¶¶ 19-20; *see also* NMSA 1978, § 30-16-11(A) (2006) (providing in relevant part that "[r]eceiving stolen property means *intentionally* to receive, retain or dispose of stolen property *knowing that it has been stolen*" (emphases added)). "[W]here it is evident that there existed reasons for and against the ruling, we may indulge in the usual appellate presumptions to affirm the [district] court." *State v. Trejo*, 1991-NMCA-143, ¶ 7, 113 N.M. 342, 825 P.2d 1252. We therefore conclude that Defendant has not carried his burden of demonstrating that the district court's ruling constituted an abuse of discretion.

### III.     The District Court Did Not Err by Allowing the State to Amend the Date of the Charged Offense

**{21}** Defendant next argues the district court erred by permitting the State to amend the complaint and allowing the jury instruction for embezzlement to include a range of dates rather than a specific date.

**{22}** With regard to the amendment to the complaint, under Rule 5-204(C) NMRA, the district court "may at any time allow the indictment or information to be amended in respect to any variance to conform to the evidence." "A variance is not fatal unless the accused cannot reasonably anticipate from the indictment what the nature of the proof against him will be." State v. Marquez, 1998-NMCA-010, ¶ 20, 124 N.M. 409, 951 P.2d 1070. "Under Rule 5-204(C), if the substantial rights of a defendant are prejudiced by a variance, then such a variance may provide the grounds for an acquittal." State v. Branch, 2010-NMSC-042, ¶ 20, 148 N.M. 601, 241 P.3d 602, overruled on other grounds by State v. Tollardo, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. We review a district court's interpretation and application of Rule 5-204 de novo. State v. Roman, 1998-NMCA-132, ¶ 8, 125 N.M. 688, 964 P.2d 852.

**{23}** Defendant contends the amendment to the complaint violated his substantive rights and prejudiced his defense. We are not persuaded by these arguments.

**{24}** Most fundamentally, the original complaint alleging embezzlement did not provide a precise date but rather generally alleged that the offense occurred "on or about December 12, 2019." Defendant was thus on notice from the outset that the State's witnesses could not say precisely on what date the alleged embezzlement occurred. *See State v. Stevens*, 2014-NMSC-011, ¶ 54, 323 P.3d 901 (stating that, "[m]ost fundamentally, the information never alleged precise dates of the multiple crimes charged . . . [but rather] it generally alleged that all of the offenses occurred 'on or about November 12, 2007'" and therefore the defendant and her counsel were on notice that the state's witness could not say precisely when the events occurred). Moreover, the complaint alleging embezzlement provided sufficient notice of the charge such that Defendant could "reasonably anticipate" that the State's evidence would relate to Defendant's failure to use the money to repair the truck, which was in Defendant's shop from mid-December 2019 to May 1, 2020. *See Marquez*, 1998-NMCA-010, ¶ 20; *see also Stevens*, 2014-NMSC-011, ¶ 50 ("A criminal indictment or information need not contain exacting detail as long as the defendant is given sufficient notice of the

charges."). In addition, the State's proposed jury instruction for embezzlement, submitted approximately one week before trial, listed a six-month period, providing Defendant additional notice that the nature of proof against him would not be limited to a specific date. And although Defendant asserts that he suffered prejudice because he "defended himself on the alleged embezzlement occurring on one particular date [and] not a range of dates over a five[-]month period," he provides no citation to the record supporting this assertion, and "[t]he mere assertion of prejudice, without more, is insufficient to establish prejudicial error warranting reversal of a conviction." *Marquez*, 1998-NMCA-010, ¶ 20 (internal quotation marks and citation omitted). Accordingly, the district court did not err by permitting the State to amend the complaint.

**{25}** Defendant also argues that the district court erred by allowing the jury instruction for embezzlement to include a range of dates rather than a specific date, claiming that that jury was "utterly confused" by the instruction. This argument, however, is undeveloped, and we decline to consider it further. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (stating that appellate courts are under no obligation to review unclear or undeveloped arguments).

## IV. Defendant's Additional Arguments Are Without Merit

**{26}** During closing argument defense counsel told the jury that the district court had "dismissed" the criminal damage to property charge. Following an objection by the State, a bench conference ensued, and the district court informed defense counsel that it was inappropriate for him to have informed the jury of a previous ruling by the court. Upon the State's request for a limiting instruction, the district court told the jury to disregard defense counsel's statement relating to the court's previous ruling and stated that it should not consider "Count II" or the reasons the jury was not deliberating on that count.

**{27}** Defendant argues the district court was required to inform the jury that it had dismissed the criminal damage to property charge, and that the court erred by instructing the jury to disregard defense counsel's comments relating to the court's dismissal of that charge. We also understand Defendant to argue that the district court committed fundamental error by failing to adequately instruct the jury on the limited use of certain evidence.

**{28}** To the extent Defendant asserts the district court was required to inform the jury that the criminal damage to property charge had been dismissed pursuant to UJI 14-5042 NMRA, UJI 14-5042 does not support this assertion, and Defendant fails to adequately develop an argument as to how it does. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what [a] part[y's] arguments might be"). We therefore decline to consider this argument further. Insofar as Defendant argues the district court erred by instructing the jury to disregard defense counsel's comments relating to the court's dismissal of the criminal damages to property charge, Defendant also fails to adequately develop this argument, or cite authority in support of

this issue, and we likewise decline to consider it further. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists.").

**{29}** Finally, we understand Defendant to argue that the district court committed fundamental error by failing to instruct the jury that certain exhibits which Defendant contends were admitted to prove criminal damage to property should not be considered in deciding the embezzlement charge. We disagree.

**{30}** As an initial matter, the exhibits at issue were not admitted for a limited purpose pursuant to Rule 11-105 NMRA. Moreover, the district court could have, in its discretion, determined that these exhibits—which indicated the truck was missing parts and damaged—were relevant to the embezzlement charge, including whether Defendant had intended to repair the truck or instead convert the money to his own use. *See State v. Aguayo*, 1992-NMCA-044, ¶ 17, 114 N.M. 124, 835 P.2d 840 ("Admission of evidence is within the sound discretion of the [district] court."). But even if we were to assume these exhibits had been admitted for a limited purpose and the district court erred by failing to sua sponte give such an instruction, Defendant has not developed an argument addressing the considerations relevant to a fundamental error analysis. *See State v. Haskins*, 2008-NMCA-086, ¶ 26, 144 N.M. 287, 186 P.3d 916 ("The fundamental error doctrine is applied to review unpreserved error when the court's conscience is shocked at a miscarriage of justice, such as when a defendant is indisputably innocent or when a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." (alteration, internal quotation marks, and citation omitted)). We therefore decline to consider this argument further. *See State v. Dickert*, 2012-NMCA-004, ¶ 35, 268 P.3d 515 (declining to review for fundamental error where the argument was undeveloped).

**CONCLUSION**

**{31}** For the foregoing reasons, we affirm.

**{32} IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**SHAMMARA H. HENDERSON, Judge**